Floyd Wallace
1613 Leopard Ln.
College Station, TX 77840
(402) 347-0770
floydwallacecivilrights@gmail.com

2:23-cv-00809-APG-NJK

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| FLOYD WALLACE | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; CHRISTIAN TORRES; JASON SHOEMAKER; CORY MCCORMICK; and DOES 1 to 50, inclusive | |
| Defendants. | |

_____ FILED  _____ RECEIVED
_____ ENTERED  _____ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 24 2023

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

## INTRODUCTION

1. Plaintiff, a black member of the press who specifically records police interactions was recording a police officer interaction outside of the Spring Valley Command Substation in Southwest Las Vegas, Nevada. Three (3) Las Vegas Metropolitan Police Department officers, including a supervisor, without reasonable suspicion that the Plaintiff was involved in any criminal activity, did interfere with, and rob Plaintiff of his liberties while he was in a place that he was lawfully allowed to be, while Plaintiff was performing constitutionally protected activities. The officers used excessive force, detained Plaintiff, handcuffed, arrested, and searched him and his possessions. None of the defendants intervened to prevent the unreasonable

1

detention, arrest, or searches.

2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights while black and recording the police is not unusual or surprising. This civil rights action seeks to vindicate Plaintiff's constitutional and statutory rights and hold the officers and their department accountable for biased policing practices and the policies (or absence of policies) that resulted in these practices.

## PARTIES

3. Plaintiff Floyd Wallace ("Wallace" or "Plaintiff") is an adult over the age of eighteen, a member of the Press, and at all times relevant hereto, was and is a resident of the State of Texas.

4. Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a quasi-municipal entity and a political subdivision of the State of Nevada created and regulated by NRS Ch. 258 and at all times relevant hereto, employed all of the individually named Defendants.

5. Defendant State of Nevada ("Nevada") is a government entity and at all times relevant hereto, operates, oversees, and manages Defendant LVMPD under the color of state law.

6. Defendant Christian Torres ("Torres") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Torres was acting under the color of state law and in the course and scope of his employment with Nevada. Torres is sued in his individual capacity, including in his capacity as a supervisor.

7. Defendant Jason Shoemaker ("Shoemaker") is, and at all relevant times was, a supervisor with the LVMPD. In doing the things herein alleged, Shoemaker was acting under color of state law and in the course and scope of his employment with Nevada. Shoemaker is sued in his individual capacity, including in his capacity as a supervisor.

2

8. Defendant Cory McCormick ("McCormick") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, McCormick was acting under the color of state law and in the course and scope of his employment with Nevada. McCormick is sued in his individual capacity, including in his capacity as a supervisor.

9. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1-50, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities if and when the same are ascertained. Plaintiff is informed and believes, and thereon alleges, that said Defendants, and each of them, are responsible in some manner for Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant", "defendants", "Defendants", or a specifically named defendant also refers to all "Doe" defendants.

10. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, one or more Doe Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including the individually named and Doe Defendants.

11. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants, including all defendants sued under fictitious names, was the agent and/or employee of each of the other Defendants, and in doing the things hereinafter alleged was acting within the course and scope of such agency and employment.

12. Plaintiff is informed and believes and thereon alleges that at all times herein

3

1    mentioned each of the Defendants, including all defendants sued under fictitious names, was the
2    agent and/or employee of each of the other Defendants, and in doing the things hereinafter
3    alleged, was acting within the course and scope of such agency and employment.
4    　　　13. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants
5    was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator,
6    an/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting
7    within the course and scope of that relationship. Plaintiff is further informed and believes, and
8    thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of
9    the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant
10   as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material
11   times, each Defendant was an integral participant, jointly engaged in constitutionally violative,
12   unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights
13   and other actionable harm.
14   　　　14. At all material times, each Defendant acted under color of the laws, statutes,
15   ordinances, and regulations of the State of Nevada.

### JURISDICTION AND VENUE

17   　　　15. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and
18   1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is
19   being brought to obtain compensatory and punitive damages for the deprivation, under color of
20   state law, of the rights of a citizen of the United States that are secured by the United States
21   Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental
22   jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C § 1367(a).
23   　　　16. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because the events

giving rise to the claims occurred in the County of Clark in Nevada which is in the U.S. District of Nevada.

## GENERAL FACTUAL ALLEGATIONS

17. At approximately 6:02 PM Pacific on May 10, 2023, Plaintiff was in the parking lot of the LVMPD's Spring Valley Command Substation at 8445 Eldora Ave, Las Vegas, Nevada, 89117, a public place where Plaintiff was legally allowed to be, video recording a police interceptor enter a vehicle gate marked "Police personnel only".

18. Once the interceptor entered the restricted area, Plaintiff walked closer to the open gate and stopped on the public side of the gate, near where the gate would close.

19. After Plaintiff had stopped on the public side of the gate and was filming, a man in street clothes exited the police interceptor vehicle and asked Plaintiff what he was doing. Plaintiff did not answer, and the man told Plaintiff that it was a restricted area behind the gate, which was obvious based on the sign.

20. When the gate was almost done closing, Plaintiff moved his camera closer to the gate but remained clearly behind the gate and recorded for approximately 10 more seconds before leaving the area and returning to the public sidewalk.

21. Plaintiff never said or did anything that would have led a reasonable law enforcement officer to fear for their safety or to suspect that Plaintiff committed, or was planning on committing, any crime.

22. While Plaintiff was walking on the public sidewalk away from the police station, he heard a siren coming from the direction of the police station go off for approximately 10 seconds and then stop.

23. Approximately 10 seconds later, at 6:04 pm, Plaintiff heard someone yelling behind

him.

24. A few seconds later, someone yelled "Police, stop!" Plaintiff immediately stopped and witnessed a police officer walking toward Plaintiff with a gun drawn and a second police officer in a police interceptor with lights on driving toward Plaintiff.

25. Plaintiff protested the unnecessary drawing of a gun and voluntarily walked to the officer's interceptor where the officers seemed to want to illegally detain Plaintiff at.

26. Plaintiff continued to assert that the police officers were violating his rights while they handcuffed Plaintiff.

27. Once handcuffed, Plaintiff asked what he was being detained for and was told "Reasonable suspicion". One of the officers said that Plaintiff was on camera trying to go into one of the gates.

28. Plaintiff continued to assert that he had broken no law and that he was in a public area. One of the police officers asserted that the parking lot was not a public area by saying, "Public area in the parking lot? Dude, that's where employees go in."

29. Plaintiff continued to assert that he had broken no law and that the officers were violating his rights at which time one of the officers began to ask Plaintiff for identification while a different officer patted Plaintiff down.

30. In order to prevent an immediate search of his wallet, Plaintiff was required to assert his right to not have his wallet searched.

31. Soon after, one of the officers told Plaintiff to "Stop being disrespectful."

32. Plaintiff refused to answer questions about his identity and asked for a supervisor. One of the officers said, "Here I am." Obviously, if a supervisor is already there and violating Plaintiff's rights, Plaintiff was requesting that supervisor's supervisor, but none was dispatched.

6

33. Soon after, one of the officers accused Plaintiff of "wearing a mask", to which Plaintiff answered "For covid."

34. Soon after, one of the officers said that if Plaintiff didn't identify himself that Plaintiff was obstructing their investigation and that Plaintiff was going to jail for that.

35. Plaintiff was forced to provide his name and birthday under threat of arrest. After, Plaintiff was again accused of being disrespectful, by one of the officers.

36. While still being detained, Plaintiff was told that if he didn't do what the officer said, that he was going to jail. "Any time after I have to readdress you, after I've given you a lawful order, you are obstructing my investigation," one of the officers said.

37. Plaintiff continued to assert that the officers were violating his rights, and one of the officers continued to say that if Plaintiff hindered their investigation that he would be arrested.

38. The officers continued to accuse Plaintiff of being suspicious for wearing a mask while in a parking lot and that Plaintiff was being detained for suspicion of auto theft. The officers engaged in profiling against black people when they likened Plaintiff standing outside of a police station exercising his first amendment rights while wearing a mask to Terry v. Ohio, where Officer McFadden patiently observed three black men walk past and peak into the window of a jewelry store a dozen times, over a period of an hour, until McFadden had reasonable suspicion.

39. Soon after, one of the officers said, "Of course I'm going to pull my gun on you because you're not obeying our commands to stop," in violation of LVMPD's Use of Force policy and Interactions With the Public policy.

40. Plaintiff continued to assert his rights while an officer threatened to call an ambulance for mental help on the Plaintiff, which would deny him of his liberty.

41. Next, an officer threatened holding Plaintiff for "resisting and terroristic threats". Soon after, one of the officers said, "I don't want a terrorist in my parking lot."

42. At approximately 6:15 PM, one of the officers said, "I have the right to detain someone that is acting suspicious." Plaintiff asserted that he wasn't being detained for suspicion of an articulatable crime, but rather suspicion alone.

43. Plaintiff acted to assist in the investigation and clear up any suspicion by explaining that he was exercising his freedom of the press and working on a story to see if the police would respect his rights. At least one of the officers did understand that Plaintiff was a first amendment auditor and that same officer expressed that exercising the freedom to record police interactions while wearing a mask is suspicious of a crime on its own.

44. Soon after, Plaintiff was accused of "bating" the police officers, by one of the officers.

45. Plaintiff continued to assert his rights and his innocence, and at approximately 6:33 PM, plaintiff asked "Am I being arrested?", but was not answered. Plaintiff continued to ask if he was being arrested and for what.

46. After the officers refused to answer several times, Plaintiff was arrested for attempted trespassing at 6:40 PM, after being detained for 36 minutes.

47. All the Defendants on the scene knew that there was no reasonable suspicion or probable cause to suspect Plaintiff of any crimes, but wrongfully believed that they were justified in detaining and arresting Plaintiff for assertion of his civil rights.

48. Plaintiff was searched and transported to the Clark County Jail where he would not be formally charged, but only released with a citation.

49. As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights

8

and liberties, suffered mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial.

50. The Defendants' behavior did not follow LVMPD's Use of Force policy and Interactions With the Public policy.

51. Plaintiff is informed and believes, and intends to prove after conducting relevant discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for accountability, and that was engaging in this First Amendment protected activity, (2) Plaintiff's negative political viewpoint of police, (3) Plaintiff's skin color, and/or (4) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the excessive force used, detention and/or arrest, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact motivated by one or more of the four factors enumerated above.

**FIRST CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Fourth Amendment**
**(Against Torres, Shoemaker, McCormick and Does 1 – 25)**

52. Plaintiff refers to paragraphs 1-51 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

53. By the actions and omissions described above, the Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiffs' rights

9

under the Fourth Amendment to the U.S. Constitution and equivalent rights under the Nevada State Constitution. These deprivations include, but are not limited to:

 a. The right to be free from detention without reasonable suspicion;

 b. The right to be free from arrest without probable cause;

 c. The right to be free from unreasonable search and seizure of property;

 d. The right to be free from excessive force and unreasonable force in the course of an arrest.

54. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

55. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Nevada.

## SECOND CAUSE OF ACTION
### 42 U.S.C. Section 1983 – Fourteenth Amendment
### (Against Torres, Shoemaker, McCormick, and Does 1 – 25)

56. Plaintiff refers to paragraphs 1-55 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

57. By the actions and omissions described above, Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and equivalent rights under the Nevada State constitution. Defendants intentionally discriminated against

1  Plaintiffs based on the color of his skin, his position as a member of the press, and due to his
2  political affiliation and viewpoints. Defendants would not have harassed, detained, arrested, used
3  force on, and searched Plaintiff if he had been more like them. In particular, according to
4  Defendants' own statements, one of the facts upon which they relied in detaining and/or arresting
5  Plaintiff is that there were previous incidents involving suspicious looking black people.
6  Choosing to detain Plaintiff – a black member of the press – based on alleged actions and/or
7  involvement of others due to the color of his skin is illegal profiling and prohibited by the
8  Fourteenth Amendment's Equal Protection Clause and by NRS 289.510. If the Defendants had
9  been told that a man of their skin color trying to get police officers autographs (instead of
10 photographing police interactions for accountability) had been in a place where he was legally
11 allowed to be, it is virtually certain that Defendants never would have detained, arrested, or
12 searched such a person in the same parking lot in the same location.

13  58. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights
14 described herein, knowingly, maliciously, and with conscious and reckless disregard for whether
15 the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or
16 omissions were the moving force behind, and proximately caused, injuries and damages to
17 Plaintiff as set forth above.

18  59. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable
19 under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such
20 conduct. No punitive damages are sought against Defendant Nevada.

21                         **THIRD CAUSE OF ACTION**
                      **42 U.S.C. Section 1983 – First Amendment**
22              **(Against Torres, Shoemaker, McCormick, and Does 1-25)**

23  60. Plaintiff refers to paragraphs 1-59 of this Complaint and incorporates by reference the

1 allegations of said paragraphs as though expressly set forth at length at this point.

2      61. By the actions and omissions described above, Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiff's rights under the First Amendment to the U.S. Constitution and equivalent rights under the Nevada State constitution. In particular, Defendants retaliated against Plaintiff for his speech, including his verbal protests and criticisms of the Defendants' actions in investigating, detaining, and arresting Plaintiffs without any basis, his exercise of his right to refuse to cooperate in what started as a consensual encounter, and his exercise of his right to record police interactions. Plaintiff also believes Defendants retaliated against him for initially refusing to assist in their investigation, which is also protected activity under the First Amendment and equivalent rights under the Nevada State constitution.

     62. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused injuries and damages to Plaintiff as set forth above.

     63. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Defendant Nevada.

### FOURTH CAUSE OF ACTION
### 42 U.S.C. Section 1983 – Monell and Supervisor Liability
### (Against LVMPD, Nevada, Torres, and Does 26-50)

     64. Plaintiff refers to paragraphs 1-63 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

65. The unconstitutional actions and/or omissions of Defendants Torres, Shoemaker, McCormick, and Does 1-25 were pursuant to the following customs, policies, practices, and/or procedures of Defendant LVMPD and Nevada, and which were directed, encouraged, allowed and/or ratified by policymaking officials with Nevada and the LVMPD:

   a. To carry out or tolerate unlawful detentions without reasonable suspicion;

   b. To carry out or tolerate unlawful arrests without probable cause;

   c. To carry out or tolerate detentions and arrests based on citizens' refusal to cooperate with consensual encounters;

   d. To carry out or tolerate detentions and arrests based on citizens' exercise of their First Amendment right to criticize and verbally protest deputies' actions;

   e. To use or tolerate excessive force;

   f. To carry out or tolerate unlawful searches of persons and properties;

   g. To carry out or tolerate discriminatory and biased policing and/or racial profiling;

   h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning each of the foregoing practices;

   i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the LVMPD concerning the fear experienced by people of different skin color and other minorities (including cop watching activists) when interacting with law enforcement in light of well documented, highly publicized, and disproportionate amount of violence committed by law enforcement against said groups, and the tactics that LVMPD officers should employ in dealing with said groups in light of such fears (especially where, as here, they have been explicitly made known to

the officers);

j. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate officers who have engaged in unlawful or unconstitutional law enforcement activity;

k. To allow officers to file false police reports.

66. Defendant Nevada, LVMPD, and Does 26-50 failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate Defendants Torres, Shoemaker, McCormick, and Does 1-25 with deliberate indifference to Plaintiff's constitutional rights.

67. The unconstitutional actions of Defendants Torrey, McCormick and Shoemaker, and Does 1-25 were approved, tolerated, and/or ratified by policymaking officers for Defendant Nevada and the LVMPD.

68. The aforementioned customs, policies, practices, and procedures, and the failure to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and terminate, and the unconstitutional approval, ratification and/or toleration of the wrongful conduct of Torres, Shoemaker, McCormick, and Does 1-25 were a moving force and/or proximate cause of the deprivation of Plaintiff's clearly established constitutional rights under the United States and the State of Nevada.

69. As the supervisor on scene, Defendants Torres, Shoemaker, and McCormick had an obligation to ensure that their subordinates, including Defendants Torres, Shoemaker, McCormick, and Does 1-25 refrained from violating Plaintiff's Constitutional rights and prevented other peace officers from violating Plaintiff's rights.

70. Because Defendants Torres, Shoemaker, and McCormick learned and were apprised

14

of the relevant facts surrounding the arrest and/or detention of Plaintiff, the use of force on Plaintiff, and the search of his person and property, and because they knew that such actions were illegal and unconstitutional, Torres, Shoemaker, and McCormick were obligated to immediately terminate those unconstitutional actions, and by failing to do so, Torres, Shoemaker, and McCormick are liable in their role as a supervisor.

71. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

## FIFTH CAUSE OF ACTION
## 42 U.S.C. Section 1981
### (Against Torres, Shoemaker, McCormick, and Does 1-25)

72. Plaintiff refers to paragraphs 1-71 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

73. In doing the things herein alleged, Defendants intentionally discriminated against Plaintiffs because of his race and political affiliation and viewpoints, thereby depriving him of his right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all other citizens.

74. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused injuries and damages to Plaintiff as set forth above.

75. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Defendant Nevada.

## SIXTH CAUSE OF ACTION
### Assault
### (Against All Defendants)

76. Plaintiff refers to paragraphs 1-75 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

77. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, attempted to make a harmful and/or offensive physical contact with Plaintiff and thereby placed Plaintiff in fear of an imminent harmful or offensive contact.

78. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

79. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of their employees acting in the course and scope of said employment, pursuant to NRS 41.032.

80. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

## SEVENTH CAUSE OF ACTION
### Battery
### (Against All Defendants)

81. Plaintiff refers to paragraphs 1-80 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

82. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

83. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

1 | and damages as set forth above.

2 | 84. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of
3 | its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

4 | 85. The conduct of the individual Defendants was malicious and oppressive in that they
5 | intended to harm Plaintiff and deprive him of his rights or their actions were despicable and
6 | carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling
7 | Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought
8 | against Defendant Nevada.

**EIGTH CAUSE OF ACTION**
**False Arrest and Imprisonment**
**(Against All Defendants)**

86. Plaintiff refers to paragraphs 1-85 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

87. In doing the things herein alleged, Defendants intentionally arrested and/or detained Plaintiff without a warrant or other legal justification, and in doing so restrained Plaintiff, handcuffed him, and placed him in patrol cars against his will, thereby depriving him of his freedom of movement.

88. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

89. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

90. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling

Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

### NINTH CAUSE OF ACTION
### Invasion of Privacy
### (Against All Defendants)

91. Plaintiff refers to paragraphs 1-90 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

92. During the incident giving rise to this action, Plaintiff had a reasonable expectation of privacy in his personal affairs, including the contents of his personal belongings such as pockets, wallets, cell phones and other electronic devices.

93. In doing the things herein alleged, Defendants intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his belongings without a warrant or other legal justification.

94. Defendants' invasion of Plaintiff's privacy would have been offensive to any reasonable person.

95. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

96. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

97. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

## TENTH CAUSE OF ACTION
### Negligence
### (Against All Defendants)

98. Plaintiff refers to paragraphs 1-97 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

99. The individual Defendants owed Plaintiff a duty to use reasonable care in connection with the parties' interactions as described herein. In particular, said Defendants had a duty to carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to excessive force, an illegal detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress of grievances, or deprivation of any of the other rights enumerated herein, and to use reasonable care to avoid engaging in biased policing or racial and political affiliation profiling.

100. In doing the things herein alleged, Defendants breached the applicable duty of care by acting unreasonably, carelessly, negligently and/or recklessly.

101. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

102. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

103. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

## PRAYER

Plaintiff prays for damages as follows:

a. For compensatory damages in an amount according to proof;

b. For punitive damages in the amount of $2,000,000 or in an amount sufficient to punish Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983 (no punitive damages are sought against Defendant Nevada);

c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. Section 1988;

e. For costs of suit;

f. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

## DECLARATION

I declare under penalty of perjury, that the foregoing is true and correct.

DATED: May 18, 2023          Respectfully submitted,

*Floyd Wallace*
Floyd Wallace
1613 Leopard Ln.
College Station, TX 77840
floydwallacecivilrights@gmail.com
(402) 347-0770
*Pro Se*