**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
  Attorneys for Defendant LVMPD

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FLOYD WALLACE,<br><br>  Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; CHRISTIAN TORRES; JASON SHOEMAKER; CORY MCCORMICK and DOES 1 to 50, inclusive,<br><br>  Defendants. | Case Number:<br>2:23-cv-00809-APG-NJK<br><br>**DEFENDANT LVMPD'S MOTION TO DISMISS** |

Defendant Las Vegas Metropolitan Police Department ("LVMPD"), by and through its attorney of record, Marquis Aurbach, hereby files its Motion to Dismiss. This Motion is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed at the time of hearing.

Dated this 17th day of July, 2023.

MARQUIS AURBACH

By *s/Craig R. Anderson*
  Craig R. Anderson, Esq.
  Nevada Bar No. 6882
  10001 Park Run Drive
  Las Vegas, Nevada 89145
  Attorneys for Defendant LVMPD

Page 1 of 19

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

# MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

This Motion requests dismissal of all claims against defendant LVMPD. At its core, this is a 42 U.S.C. § 1983 false arrest claim. Plaintiff Floyd Wallace ("Wallace"), admits on May 10, 2023, he covered his face with a black mask, traveled to an LVMPD substation, approached an area gated-off to the public, and began filming inside the restricted area. In response, several LVMPD officers detained Wallace and questioned him regarding his actions. Wallace admits he refused to answer the officers' questions and, initially, refused to even identify himself. The officers arrested Wallace for "attempted trespass."

As a result of these pled facts, Wallace sued LVMPD and several officers alleging both federal and state law claims. With respect to defendant LVMPD, Wallace alleges a federal law *Monell* claim [1] and includes it in the state law claims against its officers under a theory of *respondeat superior*. (Compl. at Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Cause of Action ("COA")) This Motion seeks dismissal of all claims against LVMPD pursuant to FRCP 12(b)(6). With respect to Wallace's federal law claim, Wallace alleges LVMPD is responsible for its officers' unconstitutional conduct because it has unconstitutional polices, practices, and customs that allowed for and ratified their behavior. This federal law claim fails for two reasons. First, the complaint's facts do not state a constitutional violation. Second, even if the complaint states a constitutional violation, it does not state sufficient facts to support a *Monell* claim as the complaint only contains boilerplate allegations and conclusory statements. With respect to Wallace's state law claims, he alleges LVMPD is responsible for the officers' state law torts under a theory of *respondeat superior*. Similar to the federal law claims, the complaint fails to plead facts supporting any of the alleged state law torts.

/ / /

/ / /

---

[1] *See Monell v. Dep't of Social Services,* 436 U.S. 658 (1978).

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

## II.     BACKGROUND

### A.     PLAINTIFF'S PLED FACTS.

According to Wallace's complaint, on May 10, 2023, he went to LVMPD's Spring Valley Command Substation to record police officers. (Compl. at ¶17) Wallace covered his face with a black mask. (*Id.* at ¶33) He then positioned himself at a gate with signs clearly prohibiting public access. (*Id.* at ¶17) Wallace then began filming the arrival of police vehicles. (*Id.* at ¶¶18-19) Eventually, a person in plain clothes approached Wallace and "asked Plaintiff what he was doing." (*Id.* at 19) Wallace ignored the individual and never said a word. (*Id.* at ¶¶19-21) Wallace eventually returned to a public sidewalk. (*Id.* at ¶22)

While on the sidewalk, Wallace was stopped by multiple uniformed police officers. (*Id.* at ¶¶24-25) An officer approached Wallace with a drawn gun, instructed to the front of a police car, and handcuffed him. (*Id.* at ¶¶24-27) Wallace was told he was being detained on "reasonable suspicion" because video surveillance showed him trying to enter a gate not open to the public. (*Id.* at ¶27) As the officers frisked Wallace for weapons, he "assert[ed] his right not to have his wallet searched . . . and asked for supervisor." (*Id.* at ¶¶29-32) Wallace refused to provide his identity. (*Id.* at ¶32) When the officers threatened Wallace with arrest for obstruction and failing to identify, Wallace "provide[d] his name and birthday under threat of arrest." (*Id.* at ¶35) Wallace claims the officers racially profiled him, accused him of being a terrorist, and a possible auto thief. (*Id.* at ¶¶35-41) Eventually, Wallace was arrested for "attempted trespassing." (*Id.* at ¶46) Wallace was transported to jail and released with a citation. (*Id.* at ¶48)

### B.     WALLACE'S BACKGROUND.

Plaintiff Wallace is a First Amendment auditor. (Compl. at ¶43) First Amendment audits are a social movement that involves photographing or filming from a public space to test constitutional rights, particularly the right to photograph and video record in a public space. If the encounter results in an actual or perceived violation of the auditor's First Amendment rights, the video is posted on Youtube, and the auditor files suit. The auditors are purposefully confrontational and provocative. *See e.g., Brown v. Basznianyn*, 2023 WL

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

3098982, *2 (D. Az. Mar. 29, 2023). Wallace has sued other police departments and police officers for almost identical behavior as he demonstrated in this case. *See e.g., Wallace v. Taylor*, 2023 WL 2964418 (5th Cir. April 14, 2023).

### C.   WALLACE'S CAUSES OF ACTION.

As a result of Wallace's pled facts, he is suing LVMPD and several of its officers alleging both federal law and state law claims. Specifically, his complaint alleges:

- **First Cause of Action**: 42 U.S.C. § 1983 claims for false arrest and excessive force against defendants Torres, Shoemaker, and McCormick.

- **Second Cause of Action:** 42 U.S.C. § 1983 "and equivalent rights under the Nevada state constitution" for equal protection violations against defendants Torres, Shoemaker, and McCormick.

- **Third Cause of Action:** 42 U.S.C. § 1983 "and equivalent rights under the Nevada state constitution" for free speech retaliation.

- **Fourth Cause of Action:** 42 U.S.C. § 1983 *Monell*[2] and Supervisory Liability against LVMPD and Torres.

- **Fifth Cause of Action:** 42 U.S.C. § 1981 for intentionally discriminating against Wallace "because of his race and political affiliation and viewpoints" against Torres, Shoemaker, and McCormick.

- **Sixth Cause of Action**: State law assault against all defendants.

- **Seventh Cause of Action**: State law battery against all defendants.

- **Eighth Cause of Action:** State law false arrest and imprisonment against all defendants.

- **Ninth Cause of Action:** State law invasion of privacy claim against all defendants.

- **Tenth Cause of Action**: State law negligence claim against all defendants.

This Motion requests the Court dismiss all claims against defendant LVMPD. These claims include the Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth causes of action.

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### III. LEGAL STANDARDS

#### A. MOTION TO DISMISS STANDARDS.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim is a question of law. *Jackson v. Southern California Gas Co.,* 881 F.2d 638, 641 (9th Cir. 1989), and is appropriate when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir. 1990) (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir. 1986)).

The United States Supreme Court has addressed the minimum standards a complaint must meet to withstand a motion to dismiss under FRCP 12(b)(6), when measured against the pleading requirements set by FRCP 8(a)(2). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff is obligated to provide the 'grounds' of his 'entitle[ment] to relief' [under Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting FRCP 8; first set of original brackets in original). The Court extended the pleading requirements articulated in *Twombly*, an anti-trust case, to all cases. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). As a result, "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

To satisfy FRCP 8(a)(2), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677-78. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* While a court must accept all allegations as true, that tenant "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

conclusory statements, do not suffice." *Id.* Ultimately, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than mere conclusions." *Id.* Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990).

B. *MONELL* STANDARDS.

A *Monell* claim is a claim for recovery against a local municipality, where a government entity could be held liable only when a constitutional deprivation arises from a governmental custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In other words, when a municipal policy is the cause of the unconstitutional actions taken by municipal employees, the municipality itself will be liable for those actions. *Id*. Liability only exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental custom even though such a custom has not received formal approval. *Id* at 690-91. The Court defined "custom" as "persistent and widespread discriminatory practices by state officials." *Id*. at 691. (citing *Adickes v. S.H. Dress & Co.,* 398 U.S. 144, 167-68 (1970)). Furthermore, the doctrine of *respondeat superior* does not apply to 42 U.S.C. § 1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691). In other words, municipal liability would not be established simply by showing that a municipal employee committed a constitutional tort during the scope of his or her employment. *Id*. at 478-79. In order for a municipality to be liable, a plaintiff must establish that the wrongful act was somehow caused by the municipality. *Monell*, 436 U.S. at 694.

An affirmative link must exist between the policy or custom and the particular constitutional violation alleged must be shown. *City of Oklahoma Cty v. Tuttle*, 471 U.S. 808, 823 (1985). Moreover, the alleged policy or custom must be the "moving force" behind the constitutional violation in order to establish liability under § 1983. *Polk County v.*

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

*Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694). Causation must be specific to the violation alleged, meaning that merely proving an unconstitutional policy, practice, or custom will not in and of itself establish liability, unless the specific injury alleged relates to the specific unconstitutional policy proved. *Board of County Comm'rs of Bryan Cty, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). Once each of these elements are met, a plaintiff must also prove that the unconstitutional policy that caused him injury was the result of something more than mere negligence on behalf of the municipality, and was instead the result of "deliberate indifference," which is a state of mind that requires a heightened level of culpability, even more so than mere "indifference." *Id.* at 411. Proof of a single incident is insufficient to establish a widespread custom or policy. *Tuttle*, 471 U.S. at 821.

To plead a proper *Monell* claim against LVMPD, Wallace must (1) identify the challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) demonstrate how the policy or custom amounted to deliberate indifference by showing how the deficiency involved was obvious and the constitutional injury was likely to occur. *Harvey v. Cty of South Lake Tahoe,* 2012 WL 1232420 (E.D. Cal. April 12, 2012). Post-*Iqbal*, a plaintiff cannot solely rely on conclusory factual allegations. Instead, a plaintiff must allege facts which, if true, show the defendant actually had a constitutionally impermissible policy, practice, or custom. *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). An actionable policy or custom is demonstrated by (1) an "express policy that, when enforced, causes a constitutional deprivation"; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law"; or (3) a constitutional injury caused by a person with "final policymaking authority." *Baxter v. Vigo County School Corp.,* 26 F.3d 728, 735 (7th Cir. 1994); *Cty of St. Louis v. Prapotnik*, 485 U.S. 112, 123 and 127, (1988) (plurality opinion).

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

## IV. LEGAL ARGUMENT

Wallace's Fourth Cause of Action alleges a *Monell* claim against defendant LVMPD. (Compl. at ¶¶64-71) Without any specific facts, Wallace alleges LVMPD's "customs, policies, practices, and/or procedures" allowed the defendant officers to commit the following constitutional violations: (1) unlawful detentions and arrests without reasonable suspicion or probable cause; (2) unlawful detentions to violate citizen's First Amendment right to verbally criticize and protest the police; (3) use of excessive force; (4) unlawful searches of persons; (5) racial profiling; (6) failure to train; (7) failure to investigate and discipline; and (8) file false reports. This claim fails for two reasons. First, the facts pled in the complaint do not state a constitutional violation. Thus, this Court need not even address the *Monell* claim. Second, even if the facts do state a constitutional violation, Wallace has pled no facts supporting the claim. In addition, because the complaint does not state a claim against the officers, the state law claims must also be dismissed.

### A. WALLACE'S *MONELL* CLAIM AGAINST LVMPD MUST BE DISMISSED.

#### 1. Wallace has not pled facts supporting a constitutional violation against the individual officers.

To bring a *Monell* claim, Wallace must first plead facts supporting a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the [constitutional violation] is quite beside the point.") The pled facts do not support any of Wallace's alleged constitutional violations.

##### a) The unlawful detention/false arrest claim (First COA).

Wallace argues the officers lacked reasonable suspicion to detain him and lacked probable cause to arrest him. (Compl. First Cause of Action) According to Wallace he went to an LVMPD substation, wearing a mask, and stood just outside a gate marked "Police Personnel Only" and began filming inside the restricted area. (*Id.* at ¶17, 33) When an officer questioned Wallace, he ignored the officer and refused to answer his questions. (*Id.* at ¶19) In response, officers detained Wallace where he initially refused to identify himself.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

Wallace never provided the officers any reason for his suspicious behavior. (*Id.* at ¶¶24-48) Because the officers were never provided any valid reason for Wallace filming in a restricted area, while concealing his identity with a mask, the officers cited plaintiff for "attempted trespassing." (*Id.* at ¶46)

"The Constitution does not guarantee that only the guilty will be arrested." *Olsen v. Henderson*, 2:12-CV-543-JCM (PAL), 2014 WL 806315, at *5 (Feb. 27, 2014) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Any arrest is privileged if it is made pursuant to probable cause. *Id*. To determine whether an officer has probable cause at the time of an arrest, a court considers "whether at that moment the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 953-54 (9th Cir. 2010) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest for any criminal offense, regardless of their stated reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). When the underlying facts claimed to support probable cause are not in dispute, whether those facts constitute probable cause is an issue of law. *See Ornelas v. United States*, 517 U.S. 690, 696-97 (1996). The eventual disposition of the charges is immaterial to a court's probable cause determination as a conviction requires a higher burden of proof than is required to show probable cause. *See, e.g., Peschel v. City of Missoula*, 686 F.Supp.2d 1107, 1121 (D. Mont. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). The probable cause analysis is the same whether under federal law or Nevada state law. *See Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494 (1970).

The law is clear a police officer is not liable for a false arrest so long as the facts and circumstances known to the officer or arresting person at the moment of the arrest would warrant a prudent person's belief a crime had been committed by the person arrested. The requirement of the presence of probable cause is not one of absolute certainty but rather one of a "fair probability" that the arrested person has committed the crime for which he is

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

charged. *United States v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir. 1990). "Probable cause demands factual specificity and must be judged according to an objective standard." *U.S. v. Struckman*, 603 F.3d 731, 739 (9th Cir. 2010). In Nevada, a finding of probable cause may be based on only "slight evidence." *See Sheriff, Clark County v. Badillo*, 95 Nev. 593, 594, 600 P.2d 222 (1979) (finding probable cause despite conflicting witness testimony when one of the witnesses identified the respondent as one of the perpetrators). When an arrest is made with probable cause, the arresting individual is granted immunity. *Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986). The subjective intentions and motivations of individual officers play no role in the probable-cause analysis. *See Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001); *U.S. v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) (probable cause standard is objective; it does not turn either on the subjective thought processes of the officer or whether the officer is truthful about the reason for the stop).

Here, the officers clearly had reasonable suspicion to detain and investigate Wallace's behavior. The material facts surrounding Wallace's detention/arrest are (1) Wallace was loitering near an employee only gate at an LVMPD substation; (2) Wallace was acting suspicious by wearing a black mask over his face and getting as close to the restricted area as possible while filming; and (3) the officers attempted to ascertain the purpose of Wallace's suspicious and threatening behavior, and he refused to explain. These facts viewed, as a whole, confirm Wallace was not sensitive to the seriousness of the circumstances he created. Even if Wallace did not intend to enter the restricted area, it is admitted he was filming in an area where LVMPD's security and safety were vital. In *Dave v. Laird*, the Southern District of Texas examined a similar case where a plaintiff was filming a "public breezeway" behind a police building and a dead-end alley where officers parked their police vehicles. 2021 WL 7367084, *3-7 (S.D. Tex. Nov. 30, 2021) When officers confronted the plaintiff, like Wallace, he responded in a hostile manner. The district court dismissed plaintiff's false arrest claim concluding that reasonable suspicion existed to detain because plaintiff filming where police officers parked their vehicles "would likely cause suspicion" and "a reasonable person filming in this area would know that their actions

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

might cause legitimate worry or even fear on the part of [police officers] who depend on the security of their building and integrity of their vehicles for their safety." *Id.* at *15-17. *See also, Turner v. Lieutenant Driver*, 848 F.3d 678, 692 (5th Cir. 2017) (reasonable to detain individual filming police station from a public sidewalk as police are able to "take into account the location of the suspicious conduct and the degree of the potential danger being investigated.")

In addition, the officers had probable cause to cite Wallace. The officers cited Wallace for "attempted trespass." Nev. Rev. Stat. § 207.200(1) makes it a misdemeanor for "any person, under circumstances not amounting to a burglary . . . [to go] upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or to commit any unlawful act." Wallace admits he approached a closed of area prohibited to the public and began filming the prohibited area. When detained by the officers, Wallace refused to explain his suspicious behavior. Therefore, the officers only knew Wallace was skulking around a prohibited area, wearing a mask, and filming sensitive information prior to being confronted by the plain clothed officer. Because Wallace refused to provide an explanation for his unusual behavior, the officers reasonably concluded that a fair probability existed that Wallace was their "to vex or annoy the owner or occupant" or "commit a[n] unlawful act." *See* Nev. Rev. Stat. § 201.200(1).

Finally, as stated above, probable cause can exist for a crime not charged. *See Devenpeck*, 543 U.S. at 153-55 (Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest for any criminal offense, regardless of their stated reason for the arrest). Under Nev. Rev. Stat. § 197.190, it is obstruction under Nevada law to "impede" and/or prolong an investigation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146-47 (9th Cir. 2012). Nevada district courts have held that an individual is obstructing when the individual is "given several opportunities to comply with Defendants' orders" but fails to do so. *Kelly v. Las Vegas Metro. Police Dep't.*, 2014 WL 3725927, *6 (July 25, 2014). Wallace admits he initially impeded the officers' investigation by failing to identify himself and that this delayed them.

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

### b) Unreasonable search and seizure of property (First COA).

Wallace also alleges an unreasonable search and seizure of property. The complaint alleges Wallace was "searched and transported to Clark County Jail." (Compl. at ¶48) The complaint does not allege any of Wallace's property was searched.

Under *Terry v. Ohio*, an officer may pat down a detained person who they reasonably believe may be armed and dangerous. 392 U.S. 1, 27 (1968). This brief search is to allow officers to conduct investigations without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Further, when a suspect is arrested, a police officer may conduct a warrantless search incident to an arrest of both the arrested person and the area within his control. *Chimel v. California*, 395 U.S. 752, 763 (1969) *abrogated on other grounds by Arizona v. Grant*, 556 U.S. 332 (2009).

### c) Excessive force (First COA).

Wallace's First Cause of Action also alleges excessive force. The only force referenced by the complaint (beyond the lawful search of Wallace's person) is that an officer drew his gun while approaching Wallace.

Courts approach excessive force claims in three stages. *See Esponizoa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010); *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). First, the court assesses the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted. *Id.* then the court evaluates the government interests by assessing the severity of the crime; whether the suspect posed an immediate threat to the officer or public's safety; and whether the suspect was resisting or attempting to escape. *Graham*, 490 U.S. at 396-97.

Here, Wallace alleges an officer approached him "with a gun drawn." (Compl. at ¶24.) Wallace does not allege the officer threatened him with the firearm or pointed it at his head. It is not unreasonable for an officer to pull his firearm when approaching a suspicious individual, who is wearing a mask over his face and has not been frisked for weapons. According to the Ninth Circuit, the drawing of a weapon becomes unreasonable when the "police officer [] terrorizes a civilian by brandishing a cocked gun in front of that civilian's

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

face" while investigating a minor crime. *Robinson v. Solano Cty.*, 278 F.3d 1007, 1123 (9th Cir. 2002). By simply approaching Wallace with his gun drawn, the officer did not use excessive force.

        **d)    Fourteenth Amendment equal protection claim (Second COA).**

Wallace alleges the officers violated his Fourteenth Amendment equal protection rights because they arrested him due to the "color of his skin, his position as a member of the press, and due to his political affiliation." (Compl. at ¶57)

To state a § 1963 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the violation was committed with an intent or purpose to discriminate based upon plaintiff's membership in a protected class. *Lee v. City of Los Angeles,* 250 F.3d 668, 686-87 (9th Cir. 2001). To prevail on a selective enforcement claim, the plaintiff must show "that enforcement had a discriminatory effect and the police were motivated for a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 603 F.3d 896, 920 (9th Cir. 2020). Where the challenged governmental policy is "facially neutral," proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy. *Id*. (citations omitted). If the action does not involve a suspect classification, a plaintiff may establish an equal protection claim showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state an equal protection claim under this theory, a plaintiff must allege that (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Id*.

Here, Wallace alleges officers intentionally discriminated against him based on the color of his skin, his position as a member of the press, and due to his political affiliation and viewpoints. First, Wallace's complaint admits he refused to provide any information to the officers beyond his identity. Thus, the officers could not have discriminated against him

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

as a member of the press or due to his political views as he never made these facts known. *See Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, the press is not a protected class. Second, Wallace's racial profiling claim cannot meet the final two prongs established in the *Willowbrook* case. The complaint does not allege Wallace was intentionally treated differently from others that are similarly situated as him and there was no rational basis for the difference in treatment. Specifically, Wallace has failed to provide facts that non-African American individuals who were filming the protected areas of police stations were not detained or arrested.

### e) First Amendment claim (Third COA).

Wallace claims the officers violated his First Amendment rights by retaliating against him "for his speech, including his verbal protests and criticisms of the Defendants' actions in investigating, detaining, and arresting Plaintiff without any basis . . ." (Compl. at ¶61) Because Wallace admits he never verbally protested or criticized the officers, his claim is really that they arrested him for filming police activity.

The Ninth Circuit has held there is a First Amendment right to film the police. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (There is a right to record law enforcement officers engaged in the exercise of their official duties in public places.) The right to film "may be subject to reasonable time, place, and manner restrictions." *Gilk v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011). The Ninth Circuit has held that "[r]easonable, content-neutral, time, place, or manner restrictions, on the other hand, are subject to 'an intermediate level of scrutiny." *Jacobson v. U.S. Dep't Homeland Sec.*, 882 F.3d 878, 882 (9th Cir. 2018) (citation omitted). Restrictions in a nonpublic forum must only be "reasonable in light of the purpose served by the forum and viewpoint neutral." *Id.*

Here, Wallace was not arrested for filming, but rather for attempted trespass. Assuming Wallace's arrest was in retaliation for his filming, the claim would still fail. Wallace admits he was attempting to film inside a non-public, gate-guarded area that was off

limits to the public. It is reasonable for security reasons to restrict individuals from filming officers leaving and entering police stations. Thus, Wallace has not pled facts sufficient for a First Amendment violation.

### f) 42 U.S.C. § 1981 claim (Fifth COA).

Wallace's Fifth Cause of Action alleges the officers discriminated against him because of his race and political affiliations. (Compl. at ¶¶72-75)

42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, national origin, or ancestry. *See* 42 U.S.C. § 1981. It prohibits racial discrimination through state or private action, and requires a showing of intentional discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). A claim of false arrest cannot typically provide the basis for a § 1981 claim. *See Brew v. City of Emeryville*, 138 F.Supp.2d1217, *1224 (N.D. Cal. 2001) (citing *Morgan v. The District of Columbia*, 550 F.Supp. 465, 467 (D.D.C. 1982), *affirmed* 725 F.2d 125 (D.C. Cir. 1983)). To survive a motion to dismiss for failure to state a claim, a plaintiff alleging a § 1981 claim must allege overt acts coupled with direct evidence that the defendants' conduct was motivated by animus against the protected class. *See Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989). The "mere knowledge of Plaintiff's ethnicity coupled with a conclusory assertion of discriminatory animus for Defendant's action does not create a plausible inference necessary to survive a 12(b)(6) motion." *Jehan Zeb Mir v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 8355841, at *2 (C.D. Cal. Sept. 19, 2019).

Here, Wallace has sufficiently alleged he is a member of a protected class based upon his race. However, he has pled no facts suggesting he was denied the right to contract for services. Therefore, this claim is untenable as a matter of law.

### 2. Even if Wallace has pled a viable 42 U.S.C. § 1983 claim against the individual officers, he has not pled sufficient facts to support a *Monell* claim.

Assuming, *arguendo*, Wallace has pled a constitutional violation, he must then connect the alleged violation of an LVMPD custom, policy, or practice by pleading specific facts. To properly plead a *Monell* claim against LVMPD, Wallace needed to (1) identify the

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

challenged policy or custom; (2) explain how the policy or custom is deficient; (3) explain how the policy or custom caused the plaintiff harm; and (4) reflect how the policy or custom amounted to deliberate indifference, i.e., show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Harvey*, 2012 WL 1232420.

Here, Wallace has not identified a specific policy or practice – instead, he pleads conclusory allegations of the existence of unconstitutional customs, policies, or practices relating to LVMPD's Fourth Amendment policies and procedures. (Compl. at ¶65). However, there is no identification of a policy, that when enforced, caused the alleged constitutional violation. *See Baxter*, 26 F.3d at 735. Wallace instead generally pleads LVMPD has polices that allow and ratify officers to commit a myriad of constitutional violations, but with no specifics. Wallace's conclusory assertions are belied by the fact he fails to identify a single other incident or event where similar supposed constitutional violations occurred. Wallace fails to plead facts demonstrating any of the following: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law; or (3) constitutional injury caused by a person with "final policymaking authority." Therefore, Plaintiff has failed to adequately plead a specific policy or practice, and Plaintiff's *Monell* claim must be dismissed pursuant to FRCP 12(b)(6) accordingly. Second, Wallace's allegations are based solely on his experience and, based upon this fact alone, the *Monell* claim must be dismissed. *Tuttle*, 471 U.S. at 823.

**B.   THE STATE LAW CLAIMS AGAINST LVMPD MUST BE DISMISSED.**

Wallace also includes LVMPD in his state law claims for assault, battery, false arrest and imprisonment, invasion of privacy, and negligence.

**1.   Assault and battery.**

Wallace's state law assault and battery claim is the same as his 42 U.S.C. § 1983 excessive force claim. He alleges excessive force was used by pointing the gun at him and

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

then taking him into custody. First, any touching of Wallace was privileged as it was pursuant to a valid arrest and he does not allege any facts suggesting unnecessary force was used to search him or handcuff him. Second, the assault claim involving the pointing of the gun fails for the same reasons Wallace's Fourth Amendment excessive force claim fails. *Ramirez v. City of Reno*, 925 F.Supp. 681, 691 (D.Nev. 1996) ("The standard for common-law assault and battery by a police officer mirrors the federal civil rights law standard. . .").

### 2. False arrest and false imprisonment

The false arrest/imprisonment claim is identical to Wallace's Fourth Amendment unreasonable search and seizure claim. The probable cause analysis is the same whether under federal law or Nevada state law. *See Marschall*, 464 P.2d 494. *Badillo*, 600 P.2d at 223 (probable cause only requires "slight evidence"). In addition, the officers are protected by discretionary immunity under Nev. Rev. Stat. § 41.032. *See Gonzalez v. Las Vegas Metro Police Dep't.*, No. 61120, 2013 WL 7158415, *2-3 (Nev. Nov. 21, 2013) (holding that an officer's decision to arrest based on a matched description in a facially valid warrant was entitled to discretionary immunity).

In *Gonzalez v. Las Vegas Metro Police Dep't.*, the Nevada Supreme Court evaluated the application of the discretionary immunity doctrine in evaluating the officer's decision to arrest and detain a suspect. In *Gonzalez*, the court found "LVMPD's decision to arrest or detain Gonzalez based on a warrant was part of a policy consideration that required analysis of multiple social, economic, efficiency, and planning concerns including public safety." *Gonzalez v. Las Vegas Metro Police Dep't.*, 61120, 2013 WL 7158415, at *3 (2013) (citing *Martinez v. Maruszczak*, 123 Nev. 433, 446-47, 168 P.3d 720, 729 (2007)); *see also see Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998) (concluding that no civil liability attached to a state trooper's decision to arrest a driver for allegedly refusing to sign a traffic ticket because the decision to do so was a discretionary decision requiring personal deliberation and judgment and, thus, entitled to immunity under NRS 41.032(2); *Coty v. Washoe Cty.*, 839 P.2d 97, 100 n.7 (Nev. 1992) ("the decision of whether to make an arrest is largely discretionary.").

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

### 3. Invasion of privacy.

"Nevada's common law recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. The purpose of the tort is to provide redress for intrusion into a person's reasonable expectation of privacy . . ." *Clark Cty. School Dist. V. Las Vegas Review-Journal*, 429 P.3d 313, 320 (Nev. 2018). The tort of invasion of privacy embraces four different tort actions: "(a) unreasonable intrusion upon the seclusion of another; or (b) appropriation of the other's name or likeness; or (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Restatement (Second) of Torts § 652A (1977); *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1278 (Nev. 1995).

Wallace alleges the officers committed this tort by searching him. However, as set forth above, the search was lawful as it was a basic search pursuant to a lawful arrest.

### 4. Negligence.

Wallace alleges the officers conducted a negligent investigation that led to his arrest. Therefore, if the arrest was lawful, this claim fails. In addition, the officers are immune pursuant to Nev. Rev. Stat. § 41.032. *See Pittman v. Lower Court Counseling*, 871 P.2d 953, 956 (1994) ("the nature of an investigation is inherently discretionary."); *Foster v. Washoe Cty.*, 964 P.2d 788, 792 (1998).

## V. CONCLUSION

Based upon the above, defendant LVMPD requests it be dismissed from this lawsuit.

Dated this 17th day of July, 2023.

MARQUIS AURBACH

By *s/Craig R. Anderson*
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendant LVMPD

MAC:14687-464 5145728_2 7/17/2023 9:33 AM

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANT LVMPD'S MOTION TO DISMISS** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 17th day of July, 2023.

☐  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒  I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Floyd Wallace<br>
1613 Leopard Lane<br>
College Station, TX 77840<br>
*Pro Per*

*s/Sherri Mong*
an employee of Marquis Aurbach