**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
  Attorneys for Defendant LVMPD

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FLOYD WALLACE,

                                    Plaintiff,

            vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; STATE OF NEVADA;
CHRISTIAN TORRES; JASON SHOEMAKER;
CORY MCCORMICK; and DOES 1 to 50,
inclusive,

                                    Defendants.

Case Number:
2:23-cv-00809-APG-NJK

**DEFENDANT LVMPD'S MOTION TO PRECLUDE JOSE DECASTRO FROM
PRACTICING LAW WITHOUT A LICENSE AND TO STRIKE PLAINTIFF'S
COMPLAINT AS AN IMPROPERLY FILED PLEADING**

        Defendant Las Vegas Metropolitan Police Department ("LVMPD"), by and through their

attorneys of record, Marquis Aurbach, hereby file their Motion to Preclude Jose DeCastro from

Practicing Law Without a License and to Strike the Plaintiff's Complaint as an Improperly Filed

Pleading. This Motion is made and based on the attached Memorandum of Points and

Authorities, the pleadings and papers on file herein, and any oral argument allowed by counsel at

the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

        This case arises out of an incident between Plaintiff Floyd Wallace ("Plaintiff"), a known

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

First Amendment auditor[1], and several LVMPD officers, which occurred on May 10, 2023. On that date, Plaintiff went to the employee parking lot of LVMPD's Spring Valley Command Substation, located at 8445 Eldora Avenue, Las Vegas, Nevada, 89117 to record vehicles entering a gate marked "Police Personnel Only." *See* ECF No. 1 at ¶ 17. Plaintiff would not only record the vehicles, but would also walk right up to the gate while it was open. *Id*. at ¶¶ 17-18. Plaintiff knew he was filming a restricted area, because it was "obvious based on the sign." *Id*. at ¶19. Also concerning was the fact Plaintiff had covered his face with a mask. *Id*. at ¶33.

The officers found Plaintiff's behavior suspicious. *Id*. at ¶¶ 33 and 38.  Not only was Plaintiff wearing what appeared to be a ski mask, but he was also wearing glasses and a red hoodie in May in Las Vegas. When someone asked Plaintiff what he was doing, he refused to answer. *Id*. at ¶ 19. Due to Plaintiff's suspicious behavior, police officers detained Plaintiff on reasonable suspicion. *Id*. at ¶ 27. Thereafter, Plaintiff was arrested for "attempted trespass" and searched. As a result of this arrest, Plaintiff filed the subject complaint on May 24, 2024. Concurrent with this Motion, defendant LVMPD is filing a motion to dismiss the complaint.

This motion seeks to address the fact that non-attorney, Jose DeCastro ("DeCastro"), another First Amendment auditor, is drafting Plaintiff's pleadings and directing this litigation. DeCastro is also suing LVMPD (file number 2:23-cv-00580-APG-EJY). Plaintiff's Complaint is almost identical to the Complaint filed by DeCastro, in which both Complaints incorporate the exact same causes of action, language, and even typos.[2] Thus, LVMPD feels compelled to file the instant motion to preclude DeCastro from engaging in the unauthorized practice of law in the future.

---

[1] First Amendment audits are a social movement that involves photographing or filming from a public space to test constitutional rights, particularly the right to photograph and video record in a public space. If the encounter results in an actual or perceived violation of the auditor's First Amendment rights, the video is posted on Youtube and the auditor files suit. The auditors are purposefully confrontational and provocative. *See e.g., Brown v. Basznianyn*, 2023 WL 3098982, *2 (D. Az. Mar. 29, 2023).

[2] *See generally* a true and correct copy of DeCastro's First Amended Complaint, which is attached hereto as **Exhibit A.**

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## II.   STATEMENT OF FACTS

### A.   DECASTRO HAS CLEARLY ASSISTED PLAINTIFF IN THE PREPARATION, DRAFTING, AND FILING OF HIS COMPLAINT AGAINST THE LVMPD DEFENDANTS.

Comparing both Complaints side-by-side, it is obvious DeCastro has engaged in the unauthorized practice of law by assisting Plaintiff in the drafting and filing his Complaint against LVMPD, and Plaintiff has only switched out some of the facts alleged in the Complaint to fit his own narrative. The glaring similarities between the two Complaints are illustrated side-by-side in the table below.

| DeCastro's Complaint | Plaintiff's Complaint |
|---|---|
| "I, Plaintiff, a member of the press who specifically records police interactions was recording a police interaction outside of a Rollin Smoke BBQ in Southwest Las Vegas."[3] | "I, Plaintiff, a black member of the press who specifically records police interactions was recording a police officer interaction outside of the Spring Valley Command Substation in Southwest Las Vegas, Nevada."[4] <br><br>---- <br> The Court should note that Plaintiff was not actually recording a police officer interaction in this case, but rather a secured, gated area of the police station. |
| "Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and recording the police is not unusual or surprising. This civil rights action seeks to vindicate Plaintiff's constitutional and statutory rights and hold the officers and their department accountable for biased policing practices and the policies (or absence of policies) that resulted in these practices."[5] | This section is copied verbatim in Plaintiff's Complaint.[6] |
| The "PARTIES" section lists out Plaintiff DeCastro, and Defendants LVMPD, the State of Nevada, and the officers involved in that specific incident.[7] | Plaintiff's "PARTIES" section is almost identical, only switching out the names of the officers involved in this incident.[8] |

---

[3] Ex. A at 1:17-19.

[4] ECF No. 1 at 1:16-18.

[5] Ex. A at 2:4-8.

[6] ECF No. 1 at 2:2-6.

[7] Ex. A at 2:10-5:5.

MARQUIS AURBACH<br>10001 Park Run Drive<br>Las Vegas, Nevada 89145<br>(702) 382-0711  FAX: (702) 382-5816

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| "This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of a citizen of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C. § 1367(a).<br><br>This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in the County of Clark in Nevada which is in the U.S. District of Nevada."[9] | This section is copied verbatim in Plaintiff's Complaint.[10] |
| "As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights and liberties, sustained physical injuries, and suffered physical pain, mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial."[11] | "As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights and liberties, suffered mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial."[12] |
| "The Defendants' behavior did not follow LVMPD's Use of Force policy and Interactions with the Public policy."[13] | This section is copied verbatim in Plaintiff's Complaint.[14] |
| "Plaintiff is informed and believes, and intends to prove after conducting relevant discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for | "Plaintiff is informed and believes, and intends to prove after conducting relevant discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for |

[8] ECF No. 1 at 2:8-4:15.

[9] Ex. A at 5:7-15.

[10] ECF No. 1 at 4:17-5:2.

[11] Ex. A at 9:7-9.

[12] ECF No. 1 at 8:23-9:2.

[13] Ex. A at 9:17-18.

[14] ECF No. 1 at 9:3-4.

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| accountability, and that was engaging in this First Amendment protected activity (2) Plaintiff's negative viewpoint of police who all contribute or hold silent (the thin blue line) about police brutality, and/or (3) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the detention and/or arrest, excessive use of force, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact motivated by one or more of the three factors enumerated above."[15] | accountability, and that was engaging in this First Amendment protected activity, (2) Plaintiff's negative political viewpoint of police, (3) Plaintiff's skin color, and/or (4) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the excessive force used, detention and/or arrest, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact motivated by one or more of the four factors enumerated above."[16]<br><br>----<br><br>The Court should note that even the sporadic placement of the apostrophes in this section are the same in both Complaints. |
| The "CAUSE OF ACTION" section outlines ten (10) causes of action for (1) 42 U.S.C. Section 1983 – Fourth Amendment; (2) 42 U.S.C. Section 1983 – Fourteenth Amendment; (3) 42 U.S.C. Section 1983 – First Amendment; (4) 42 U.S.C. Section 1983 – *Monell* and Supervisor Liability; (5) 42 U.S.C. Section 1981; (6) Assault; (7) Battery; (8) False Arrest and Imprisonment; (9) Invasion of Privacy; and (10) Negligence.[17] | This section is copied almost verbatim in Plaintiff's Complaint, even down to the typos.[18]<br><br>----<br><br>The Court should note that the EIGHTH cause of action is misspelled as "EIGTH" in both Complaints. |
| "Plaintiff prays for damages as follows: (a) For compensatory damages in an amount according to proof; (b) For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish Defendants' conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983 (no punitive damages are sought against Defendant Nevada); (c) For | Plaintiff's "PRAYER" section is almost identical, with the only difference being that Plaintiff's request for punitive damages is $2,000,000 instead of $5,000,000.[20] |

---

[15] Ex. A at 10:12-11:1.

[16] ECF No. 1 at 9:5-17.

[17] Ex. A at 11:2-21:16.

[18] ECF No. 1 at 9:18-19:23.

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

| all applicable statutory penalties; (d) For attorneys' fees pursuant to 42 U.S.C. Section 1988; (e) For costs of suit; (f) For such other and further relief as the Court deems just and proper."[19] | |

In addition to the evident similarities between the two Complaints, DeCastro has openly spoken about Plaintiff's case on his YouTube channel, Delete Lawz, where he said that he wanted to send a "real quick message to the Las Vegas Metro Police Department, the federal civil rights lawsuit continues and **you will be held accountable** for wrongfully arresting Mr. Floyd Wallace."[21] DeCastro adamantly stated his distaste for police officers, stating "Las Vegas Metro Police Department has got to understand, you will not arrest journalists and if you do, **I will be damn sure that you are held accountable** for what you do to people."[22] DeCastro further indicated him and Wallace "did an audit together, [which] was kind of nice, [because] it was nice to have someone there **that was unafraid of these rap boot thug pigs**."[23] DeCastro claims to have helped Wallace raise the funds to file his lawsuit because during his video, he gave a "big thank you to everybody who helped crowdfund the cost of Mr. Wallace's lawsuit.[24] DeCastro even admitted he "went to the federal building [] as a courier for [Wallace] **to file this lawsuit**."[25]

/ / /

/ / /

---

[20] ECF No. 1 at 20:3-11.

[19] Ex. A at 21:18-22:3.

[21] *See* DeCastro's Delete Lawz YouTube video dated June 10, 2023 ("Video 1") at https://www.youtube.com/watch?v=Vh1x7F-6GaE at 2:59-3:10.

[22] *Id*. at 3:11-3:22.

[23] *Id*. at 7:01-7:14.

[24] *Id*. at 11:45-11:52.

[25] *See* DeCastro's Delete Lawz YouTube video dated May 24, 2023 ("Video 2") at https://www.youtube.com/watch?v=flG9nloq3Ag at 38:25-38:28.

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Once Plaintiff's Complaint was filed, DeCastro went through the Complaint online and continued to provide legal advice to his viewers on how to draft and file a legal pleading such as Plaintiff's Complaint.[26] DeCastro specifically advised his viewers on how to draft the caption, introduction, parties, jurisdiction and venue, and general factual allegations of the Complaint if his viewers ever wanted to sue.[27] DeCastro further stated "if they arrest journalists here, I'll [] seek them out and work with them and help them."[28] The Court should note DeCastro is **not** a licensed attorney, and therefore is engaging in unauthorized practice of law.

It appears both DeCastro and Plaintiff have an axe to grind with LVMPD and DeCastro has assisted Plaintiff in bringing a trumped up, frivolous suit Plaintiff "will be pursuing vigorously,"[29] where there was reasonable suspicion for Plaintiff's detention and probable cause for his arrest. DeCastro has not only been assisting Plaintiff with his case, but also appears to be soliciting his services for any of his viewers who may be arrested in the future, which means this could be a continuous issue moving forward. Thus, the Court should issue an order to permanently preclude DeCastro from the unauthorized practice of law.

## III.   <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1654, "parties may plead and conduct their own cases personally." In an action brought by a pro se litigant, the real party in interest must be the person who "has the right to be enforced." *Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664 (9th Cir.2008). Although a non-attorney may appear on his own behalf, that privilege is personal to him. *McShane v. United States,* 366 F.2d 286, 288 (9th Cir.1966). A non-attorney has no authority to appear as an attorney for people other than himself. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir.1962); *Collins v. O'Brien,* 208 F.2d 44, 45 (D.C.Cir.1953), cert. denied, 347 U.S. 944, 74 S.Ct. 640, 98 L.Ed. 1092 (1954).

[26] *Id.* at 16:55-20:15; 21:42-37:18; 40:51-43:49.

[27] *Id*. at 24:06-24:53.

[28] *Id*. at 48:28-48:35.

[29] *See* Video 1 at 14:21-14:25.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

The Nevada Supreme Court in *In re Lerner,* 124 Nev. 1232, 1236, 197 P.3d 1067 (2008) cited several general definitions of the term "the practice of law," including the Ninth Circuit's definition in *Taub v. Weber,* 366 F.3d 966, 970 (9th Cir.2004) that the "'practice of law' means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice or other assistance.'" *Lerner*, 124 Nev. at 1239, 197 P.3d at 1072–73.

## IV.   <u>LEGAL ARGUMENT</u>

### A.   THE COURT SHOULD ISSUE AN ORDER PRECLUDING JOSE DECASTRO FROM PRACTICING LAW WITHOUT A LICENSE AND PROVIDING UNAUTHORIZED LEGAL ASSISTANCE IN THIS CASE.

Pursuant to NRS 7.285(1)(a), a person shall not practice law in the State of Nevada if that person is not an active member of the State Bar of Nevada or otherwise authorized to practice law in Nevada. A person who violates NRS 7.285(1) may be found guilty of a misdemeanor for the first offense, a gross misdemeanor for the second offense, and a category E felony for any third and subsequent offense in the preceding seven (7) years. NRS 7.285(2). The overarching reason for requiring that only lawyers engage in the practice of law is to "ensure that the public is served by those who have demonstrated training and competence and who are subject to regulation and discipline." *Handley v. Bank of Am., N.A.,* No. 2:10-CV-01644-RLH, 2010 WL 4607014 (D. Nev. Nov. 4, 2010) (citing *Lerner*, 197 P.3d at 1072).

An individual engages in the unauthorized practice of law when he performs activities customarily executed by licensed attorneys. *Arteaga v. Hutchins Drywall, Inc.,* No. 2:06-CV-01177-KJD, 2011 WL 219918 *2 (D. Nev. Jan. 21, 2011) (citing *Lerner*, 197 P.3d at 1071). Some examples of activities constituting the unauthorized practice of law include evaluating legal claims, filing documents, and appearing in court on behalf of someone else. *Id*. Nevada law makes it clear that giving legal advice and exercising legal judgment constitute the practice of law. *Pioneer Title Ins. & Trust v. State Bar of Nevada*, 74 Nev. 186, 326 P.2d 408, 411 (1958).

/ / /

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

In *Sprau v. City of Surprise*, the district court of Arizona had to rule on a similar issue as the one described herein. No. CV-12-437-PHX-GMS, 2012 WL 1987184 *1 (D. Ariz. June 4, 2012). In *Sprau*, the Defendants City of Surprise and Surprise Police Department ("SPD") filed a Motion to Preclude Ammon M. Sprau from Practicing Law Without a License. *Id*. Defendants believed that Ammon Sprau ("Sprau I") had been acting as an unauthorized legal representative for his son Ammon Sprau II ("Sprau II") because it appears that Sprau I assisted in the preparation of the Complaint. *Id*. The Court determined that since Sprau I was not a licensed attorney, that he was precluded from practicing law on behalf of his son. *Id*.

Here, DeCastro is a self-proclaimed constitutional law scholar who has been assisting Plaintiff by providing legal advice that attempts to address Plaintiff's individualized needs based on the incident that occurred on May 10, 2023. The obvious similarities between DeCastro and Plaintiff's Complaint demonstrates DeCastro helped Plaintiff draft a legal pleading, which is a function customarily executed by licensed attorneys. Moreover, DeCastro has openly admitted to going to file the lawsuit on Plaintiff's behalf. The *Arteaga* Court has provided both of these services, in and of themselves, constitute an unauthorized practice of law.

To take it a step further, DeCastro openly discussed Plaintiff's Complaint online for his YouTube audience, informing them on how to draft and file the different sections of a Complaint, which arguably is DeCastro giving unsolicited legal advice to subscribers that view his channel. DeCastro has even mentioned if any "journalists" found themselves to be arrested, he would seek them out to help them file a lawsuit. Therefore, it is clear DeCastro has no intention of stopping with Plaintiff, but intends to offer his services and provide legal advice to any individual who may find themselves in a situation where they believe they were wrongly arrested by the police. Thus, just like in *Sprau* where the Court granted the Defendants' Motion to Preclude Sprau I from Practicing Law Without a License because it found Sprau I had assisted Sprau II in the preparation of his Complaint, the Court should rule the same here and grant this motion in its entirety.

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**B.     IF THE COURT FINDS DECASTRO HAS PROVIDED UNAUTHORIZED LEGAL ASSISTANCE IN DRAFTING AND FILING PLAINTIFF'S COMPLAINT, THE COURT STRIKE THE COMPLAINT AS IMPROPER.**

Where a person has engaged in the unauthorized practice of law and filed pleadings in an action, the first appropriate remedy is for the Court to strike the improperly filed pleadings. *Henry v. Rizzolo*, No. 208CV00635PMPGWF, 2009 WL 10692950 *2 (D. Nev. Oct. 23, 2009) (citing *Hamilton v. Ill. Central Railroad Co*., 2008 WL 78784 at *1-*2 (S.D. Ill., Jan. 7, 2008) (striking affidavits submitted through the unauthorized practice of law) and *Unalachtigo Band of the Nanticoke-Lenni Lenape Nation v. New Jersey*, 2007 WL 4547501 (D.N.J., Dec. 17, 2007) (striking Plaintiff's motion for sanctions as its filing by a person without a license to practice law constituted unauthorized practice of law)). Consistent with striking the improperly filed pleadings, the party should also be prohibited from using any additional services of the non-attorney. *Id*. Should he continue to do so, he would be leaving himself open to having more severe sanctions imposed. *Id*.

In addition, the Federal Rules of Civil Procedure provide the time for answering a Complaint is extended by a motion under Rule 12. *Carter v. Penzone*, No. CV182315PHXROSJFM, 2019 WL 10984451 *1 (D. Ariz. Sept. 4, 2019) (citing Fed. R. Civ. Proc. 12(a)(4)). Rule 12 includes motions to dismiss (Rule 12(b)), motions for judgment on the pleadings (Rule 12(c)), motions for a more definite statement (Rule 12(e)), **and motions to strike** (Rule 12(f)). *Id*.

Since the instant motion includes a motion to strike under Rule 12(f), the time to answer the Complaint should be extended until the Court reaches a determination on these issues. Furthermore, if the Court determines DeCastro has engaged in the unauthorized practice of law, then pursuant to *Rizzolo*, the first appropriate remedy is for the Court to strike the improperly filed Complaint. Additionally, if such determination is made, then the Court should also prohibit Plaintiff from using any of DeCastro's legal advice moving forward. Then, if Plaintiff continues to receive any legal advice or services from DeCastro that are normally provided by a licensed

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

attorney, then the Court should sanction Plaintiff for knowingly receiving such unauthorized legal services.

**V.  CONCLUSION**

Accordingly, LVMPD respectfully requests this Court grant its Motion to Preclude Jose DeCastro from Practicing Law Without a License and to Strike the Complaint as an Improperly Filed Pleading in its entirety. At a minimum, this Court should issue an order prohibiting DeCastro from participating, assisting, or providing legal advice to Plaintiff in this case.

Dated this 17th day of July, 2023.

MARQUIS AURBACH

By   *s/Craig R. Anderson*
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendant LVMPD

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **MOTION TO PRECLUDE JOSE DECASTRO FROM PRACTICING LAW WITHOUT A LICENSE AND TO STRIKE THE COMPLAINT AS AN IMPROPERLY FILED PLEADING** was submitted electronically for filing and/or service with the United States District Court on the 17th day of July, 2023. Electronic service of the foregoing document shall be made in accordance with the CM/ECF Service List as follows: N/A

I further certify that I served a copy of this document by mailing a true and correct copy thereof, postage prepaid, addressed to:

Floyd Wallace
1613 Leopard Lane
College Station, TX 77840
Pro Per

*s/Sherri Mong*
an employee of Marquis Aurbach

MAC:14687-464 5145408_1 7/17/2023 9:26 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Exhibit A

Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
(310) 963-2445
chille@situationcreator.com


# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOSE DECASTRO | ) Case No.: 2:23-cv-00580-APG-EJY |
| | ) |
| Plaintiff, | ) **FIRST AMENDED COMPLAINT FOR** |
| | ) **DAMAGES AND DEMAND FOR** |
| v. | ) **JURY TRIAL** |
| | ) |
| LAS VEGAS METROPOLITAN POLICE | ) (As a matter of course per Fed. R. Civ. |
| DEPARTMENT; STATE OF NEVADA; | ) Proc.15(a)(1)(A)) |
| BRANDEN BOURQUE; JASON TORREY; | ) |
| C. DINGLE; B. SORENSON; JESSE | ) |
| SANDOVAL; C. DOOLITTLE; | ) |
| and DOES 1 to 50, inclusive | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

## INTRODUCTION

1. Plaintiff, a member of the press who specifically records police interactions was

recording a police officer interaction outside of a Rollin Smoke BBQ in Southwest Las Vegas,

Nevada. Five Las Vegas Metropolitan Police officers, including the officer that he was

recording, under the guise of protecting the privacy of another citizen in public, without

reasonable suspicion that the Plaintiff was involved in any criminal activity, did interfere with,

and rob Plaintiff of his liberties while he was in a place that he was lawfully allowed to be, while

Plaintiff was performing constitutionally protected activities. The officers detained Plaintiff,

1

1    handcuffed, arrested, battered, tortured, forced him into the back of a patrol vehicle, and

2    searched him and his possessions. None of the defendants intervened to prevent the unreasonable

3    detention, arrest, battery, torture, or searches.

4         2. Sadly, the abusive treatment Plaintiff endured for merely asserting his rights and

5    recording the police is not unusual or surprising. This civil rights action seeks to vindicate

6    Plaintiff's constitutional and statutory rights and hold the officers and their department

7    accountable for biased policing practices and the policies (or absence of policies) that resulted in

8    these practices.

9                              **PARTIES**

10        3. Plaintiff Jose DeCastro ("DeCastro") is an adult over the age of eighteen, a member of

11   the press, and at all times relevant hereto, was and is a resident of the State of California.

12        4. Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a quasi-

13   municipal entity and a political subdivision of the State of Nevada created and regulated by NRS

14   Ch. 258 and at all times relevant hereto, employed all of the individually named Defendants.

15        5. Defendant State of Nevada ("Nevada") is a government entity and at all time relevant

16   hereto, operates, oversees, and manages Defendant LVMPD under the color of state law.

17        6. Defendant Branden Bourque ("Bourque") is, and at all relevant times was, an officer

18   with the LVMPD. In doing the things herein alleged, Bourque was acting under the color of state

19   law and in the course and scope of his employment with Nevada. Bourque is sued in his

20   individual capacity.

21        7. Defendant Jason Torrey ("Torrey") is, and at all relevant times was, a supervisor with

22   the LVMPD. In doing the things herein alleged, Torrey was acting under color of state law and

23   in the course and scope of his employment with Nevada. Torrey is sued in his individual

capacity, including in his capacity as a supervisor.

8. Defendant C. Dingle ("Dingle") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Dingle was acting under the color of state law and in the course and scope of his employment with Nevada. Dingle is sued in his individual capacity. Plaintiff does not know the full true name of C. Dingle.

9. Defendant B. Sorenson ("Sorenson") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Sorenson was acting under the color of state law and in the course and scope of his employment with Nevada. Sorenson is sued in his individual capacity. Plaintiff does not know the full true name of B. Sorenson.

10. Defendant Jesse Sandoval ("Sandoval") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Sandoval was acting under the color of state law and in the course and scope of his employment with Nevada. Sandoval is sued in his individual capacity.

11. Defendant C. Doolittle ("Doolittle") is, and at all relevant times was, an officer with the LVMPD. In doing the things herein alleged, Doolittle was acting under the color of state law and in the course and scope of his employment with Nevada. Doolittle is sued in his individual capacity. Plaintiff does not know the full true name of C. Doolittle.

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1-50, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities if and when the same are ascertained. Plaintiff is informed and believes, and thereon alleges, that said Defendants, and each of them, are responsible in some manner for Plaintiff's damages as herein alleged. Each reference in this complaint to "defendant",

"defendants", "Defendants", or a specifically named defendant also refers to all "Doe" defendants.

13. Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, one or more Doe Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including the individually named and Doe Defendants.

14. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants, including all defendants sued under fictitious names, was the agent and/or employee of each of the other Defendants, and in doing the things hereinafter alleged was acting within the course and scope of such agency and employment.

15. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants, including all defendants sued under fictitious names, was the agent and/or employee of each of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

16. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, an/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material

times, each Defendant was an integral participant, jointly engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other actionable harm.

17. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Nevada.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it arises under the Constitution and laws of the United States, as it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of a citizen of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. This Court has supplemental jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C § 1367(a).

19. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in the County of Clark in Nevada which is in the U.S. District of Nevada.

## GENERAL FACTUAL ALLEGATIONS

20. At approximately 4:30pm Pacific on March 15, 2023, Plaintiff happened upon a police interaction between a woman sitting in a silver Hyundai Elantra and Bourque who was sitting in a Ford police interceptor with the LVMPD logo on it and the number 19084. Plaintiff does not know the woman's name but will refer to her as "Jane".

21. Plaintiff started recording the police interaction on one of his phones, moved to a position approximately 10 feet away from Jane and making sure not to become between Bourque and Jane, he asked her if she, "Was good. Are you okay?"

22. Within six seconds, Bourque left his vehicle, got Plaintiff's attention, and told him to back up, which Plaintiff immediately did, giving Bourque an additional five feet.

23. Bourque told Plaintiff to back up again, or he would detain Plaintiff, at which time Plaintiff began asserting his rights to record the interaction, saying "I'm more than 10 feet away. I'm a member of the press. I have a right to be here." Bourque threatened to detain Plaintiff for "obstructing" and said, "She deserves privacy. This is not your business."

24. Plaintiff continued to assert his rights and notified Bourque that Plaintiff was a member of the press at which time Bourque got upset and said that he was detaining Plaintiff.

25. Bourque told Jane to leave and started walking aggressively toward Plaintiff as if to use force, and Plaintiff took a step back to prevent any physical confrontation.

26. Plaintiff continued to protest Bourque putting his hands on him unnecessarily, but Bourque was patently interested in manhandling Plaintiff in some way, and said "Listen, I *am* going to put my hands on you." Bourque did indeed batter Plaintiff.

27. While Plaintiff was firm in his verbal tone, he never screamed or yelled, he never threatened Defendants, and never said or did anything that would have led a reasonable law enforcement officer to fear for their safety or to suspect that Plaintiff committed, or was planning on committing, any crime.

26. Plaintiff asked for a supervisor and while continuing to protest against illegal detainment and against the use of unnecessary force, Plaintiff offered to walk to Bourque's vehicle which seemed to be where the officer wanted to illegally detain Plaintiff. As soon as Plaintiff reached the vehicle, he was forcefully grabbed and told that he was being placed under arrest.

27. Plaintiff was patted down and placed in handcuffs. Plaintiff made Defendants aware

1   of a prior shoulder injury, and Plaintiff was put in two pairs of handcuffs to adhere to his medical

2   needs. Although later during the encounter, a Defendant police officer would yank and squeeze

3   forcefully on Plaintiff's arm, over and over and over, hurting his arm and shoulder unnecessarily.

4       28. Plaintiff was soon surrounded by four different police officers, now Defendants,

5   where he continued to protest that they had no valid reason to detain or arrest him. Bourque

6   accused Plaintiff of being on drugs based on the color of his skin. Plaintiff said that he did not

7   have a criminal record and Bourque entered his vehicle to type up a report.

8       29. Soon after, one of the Defendant officers demanded that Plaintiff look only straight

9   ahead and when Plaintiff did not immediately comply, the Defendant began squeezing Plaintiff's

10  elbow, placing pressure on Plaintiff's ulnar nerve.

11      30. Plaintiff complained about the pain and protested against needing to look in a specific

12  direction to have an arrest effectuated on him.

13      31. The Defendant squeezing Plaintiff's elbow said that it was within their policy to

14  squeeze elbows for people in their custody that did not comply with random commands that

15  would grant complete dominion over another human being; from which way Plaintiff's head

16  could turn, to his right to use speech, or when he can blink.

17      32. Plaintiff did experience severe pain and paresthesia from the compression of his ulnar

18  nerve.

19      33. When Plaintiff pleaded for help from the surrounding Defendant officers, they

20  completely ignored Plaintiff. Plaintiff told them, "You're going to be sued for Failing to

21  intervene. I'm sitting here telling you this man is torturing me. Please ask him to stop." Plaintiff

22  was ignored by all sworn peace officers on the scene, who are now Defendants.

23      34. Plaintiff's elbow was squeezed for approximately fifteen (15) minutes in total before

1    Plaintiff's pain tolerance forced him to tear his elbow away from the Defendant officer.

2          35. At some point, Defendant Torrey, the supervisor, arrived on the scene and authorized

3    the Defendants' behavior as being within their policy. Torrey then stated that Plaintiff should be

4    arrested to discourage Plaintiff's behavior.

5          36. All the Defendants on the scene knew that there was no reasonable suspicion or

6    probable cause to suspect Plaintiff of any crimes, but wrongfully believed that they were justified

7    in detaining Plaintiff for assertion of his civil rights and for refusing to cooperate with the

8    Defendants' feelings and ridiculous unreasonable demands on a law-abiding citizen.

9          37. Bourque engaged in profiling against members of the press when he stated that First

10   Amendment Auditors are known for dropping their phone, pulling out guns and shooting at

11   officers, which is preposterous and provably false.

12         38. A Defendant officer said that Plaintiff needed to be patted down again. Plaintiff

13   protested that he'd already been patted down by two officers. The officer then spread Plaintiff's

14   legs uncomfortably wide and purposely and maliciously, and with significant force, struck

15   Plaintiff in the testicles with what felt like a closed fist. Plaintiff yelled in pain, "I can't believe

16   you just hit me in the nuts!"

17         39. Plaintiff was forcibly placed into a police vehicle by Defendants who pulled the seat

18   belt as tight as they could, knocking the air out of the Plaintiff. Plaintiff again pleaded for help

19   from surrounding officers, but he was ignored again.

20         40. B. Sorenson attempted to get Plaintiff arrested for NRS 202.487 for having his dog in

21   a vehicle, even though Plaintiff's animal was not in unsafe conditions. Plaintiff was searched and

22   transported to the Clark County Jail where he would not be formally charged, but only released

23   with citations, approximately five hours after the incident began.

41. The officers' actions left Plaintiff in the position where he had to pay for a ride back to his vehicle and did pay monies for such a ride. On the arm that Defendant squeezed, Plaintiff was left with a severe bruise in his elbow area, continues to have paresthesia in his index and thumb, and requires ongoing medical care. Almost a month after the incident, B. Sorenson continues to harass Plaintiff by warning him against violating NRS 202.487 although Plaintiff has never left his pet in unsafe conditions.

42. As a result of the Defendants' actions, Plaintiff suffered a deprivation of his rights and liberties, sustained physical injuries, and suffered physical pain, mental suffering, emotional distress, fear, embarrassment, and other general damages in an amount to be proven at trial.

43. At no time during the encounter with Defendants did Plaintiff do or say anything that would put a reasonable officer in fear of his or her safety.

44. Following the incident, Bourque claimed in a written incident report that the reason why Plaintiff was arrested was for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised that he was detained. A detained person's rights are only limited as to leaving. A police officer's, specifically Defendant Bourque's, feelings about lawful behavior must be weighed against a citizen's rights. The Defendants' behavior did not follow LVMPD's Use of Force policy and Interactions With the Public policy.

45. The written report by Bourque also claimed:

> Because DeCastro was physically uncooperative with officers, admitted to being in trouble numerous times in the past for similar reasons, and would not even allow officers to explain to him why he was detained or placed in handcuffs, we determined that he was not a good candidate for a citation and release. Because of DeCastro's actions it was clear that his criminal behavior would continue in the area if police did not act.

9

46. Plaintiff did not admit to "being in trouble numerous times" but said the opposite. The facts in the incident report were either fabricated or merely pretextual. Even if the facts set forth in Defendant Bourque's report were true (which the video evidence disputes), those facts still did not give rise to a reasonable suspicion to detain Plaintiff (Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968)), and certainly did not furnish probable cause to arrest Plaintiff. Plaintiff stated early in the encounter that he had no criminal record, and there wasn't any criminal behavior. At that point, a reasonable officer would have left the Plaintiff alone. Bourque never told Plaintiff that there was an investigation or that he was interfering with it. Rather, Bourque only demanded that Plaintiff respect Jane's privacy in public. Defendant Bourque seemed only intent on preventing Plaintiff from recording the police interaction. This is probably because Plaintiff has recently covered several stories about LVMPD that went viral on the internet.

47. Plaintiff is informed and believes, and intends to prove after conducting relevant discovery, that Defendants' actions in detaining and/or arresting Plaintiff, using force on him, and illegally searching him and his belongings, was motivated largely or entirely by the following (1) Plaintiffs' position as a member of the press that records police interactions for accountability, and that was engaging in this First Amendment protected activity (2) Plaintiff's negative viewpoint of police who all contribute or hold silent (the thin blue line) about police brutality, and/or (3) Plaintiffs' verbal protestations of the Defendants' actions and Plaintiff's accusation that the Defendants were harassing him. Indeed, as shown on the video footage captured by Plaintiff's cell phone and the video footage Plaintiff expects to obtain from the Defendants' body cams, Plaintiff did not do or say anything that would have provided reasonable suspicion or probable cause for the detention and/or arrest, excessive use of force, and subsequent searches. Therefore, there is a strong inference that the Defendants were in fact

motivated by one or more of the three factors enumerated above.

### FIRST CAUSE OF ACTION
### 42 U.S.C. Section 1983 – Fourth Amendment
### (Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1 – 25)

48. Plaintiff refers to paragraphs 1-47 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

49. By the actions and omissions described above, the Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiffs' rights under the Fourth Amendment to the U.S. Constitution and equivalent rights under the Nevada State Constitution. These deprivations include, but are not limited to:

    a. The right to be free from detention without reasonable suspicion;

    b. The right to be free from arrest without probable cause;

    c. The right to be free from unreasonable search and seizure of property;

    d. The right to be free from excessive force and unreasonable force and restraint in the course of an arrest.

50. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

51. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Nevada.

**SECOND CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Fourteenth Amendment**
**(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1 – 25)**

52. Plaintiff refers to paragraphs 1-51 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

53. By the actions and omissions described above, Defendants, acting under color of state law in their individual capacities, and as integral participants, violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and equivalent rights under the Nevada State constitution. Defendants intentionally discriminated against Plaintiffs based on the color of his skin, his position as a member of the press, and due to his political affiliation and viewpoints. Defendants would not have harassed, detained, arrested, used force on, and searched Plaintiff if he had been more like them. In particular, according to Defendants' own incident reports, one of the facts upon which they relied in detaining and/or arresting Plaintiff is that there were previous incidents involving members of the press dropping their cameras and pulling out guns. Choosing to detain Plaintiff – a member of the press – based on alleged actions and/or involvement of other members of the press and due to the color of his skin is illegal profiling and prohibited by the Fourteenth Amendment's Equal Protection Clause and by NRS 289.510. If the Defendants had been told that a man of their skin color trying to get police officers autographs (instead of photographing police interactions for accountability) had pulled guns on police, it is virtually certain that Defendants never would have detained, arrested, or searched such a person in the same parking lot in the same location.

54. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

omissions were the moving force behind, and proximately caused, injuries and damages to

Plaintiff as set forth above.

55. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable

under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such

conduct. No punitive damages are sought against Defendant Nevada.

### THIRD CAUSE OF ACTION
### 42 U.S.C. Section 1983 – First Amendment
### (Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25)

56. Plaintiff refers to paragraphs 1-55 of this Complaint and incorporates by reference the

allegations of said paragraphs as though expressly set forth at length at this point.

57. By the actions and omissions described above, Defendants, acting under color of state

law in their individual capacities, and as integral participants, violated Plaintiff's rights under the

First Amendment to the U.S. Constitution and equivalent rights under the Nevada State

constitution. In particular, Defendants retaliated against Plaintiff for his speech, including his

verbal protests and criticisms of the Defendants' actions in investigating, detaining, and arresting

Plaintiffs without any basis, his exercise of his right to refuse to cooperate in what started as a

consensual encounter, and his exercise of his right to record police interactions. Plaintiff also

believes Defendants retaliated against him for refusing to cooperate in a consensual encounter,

which is also protected activity under the First Amendment and equivalent rights under the

Nevada State constitution.

58. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights

described herein, knowingly, maliciously, and with conscious and reckless disregard for whether

the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

omissions were the moving force behind, and proximately caused injuries and damages to

13

Plaintiff as set forth above.

59. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Defendant Nevada.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. Section 1983 – Monell and Supervisor Liability**
**(Against LVMPD, Nevada, Torrey, and Does 26-50)**

60. Plaintiff refers to paragraphs 1-59 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

61. The unconstitutional actions and/or omissions of Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 were pursuant to the following customs, policies, practices, and/or procedures of Defendant LVMPD and Nevada, and which were directed, encouraged, allowed and/or ratified by policymaking officials with Nevada and the LVMPD:

       a. To carry out or tolerate unlawful detentions without reasonable suspicion;

       b. To carry out or tolerate unlawful arrests without probable cause;

       c. To carry out or tolerate detentions and arrests based on citizens' refusal to cooperate with consensual encounters;

       d. To carry out or tolerate detentions and arrests based on citizens' exercise of their First Amendment right to criticize and verbally protest deputies' actions;

       e. To use or tolerate excessive force;

       f. To carry out or tolerate unlawful searches of persons and properties;

       g. To carry out or tolerate discriminatory and biased policing and/or racial profiling;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning each of the foregoing practices;

i. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures within the LVMPD concerning the fear experienced by people of different skin color and other minorities (including cop watching activists) when interacting with law enforcement in light of well documented, highly publicized, and disproportionate amount of violence committed by law enforcement against said groups, and the tactics that LVMPD officers should employ in dealing with said groups in light of such fears (especially where, as here, they have been explicitly made known to the officers);

j. To ignore and/or fail to properly investigate, supervise, discipline, and/or terminate officers who have engaged in unlawful or unconstitutional law enforcement activity;

k. To allow officers to file false police reports.

62. Defendant Nevada, LVMPD, and Does 26-50 failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 with deliberate indifference to Plaintiff's constitutional rights. Specifically, Defendants that tortured Plaintiff. In a country that is based on respecting Constitutional Rights, those officers are tyrants and a menace, and their actions are unbecoming of being called "An Officer". The men who watched them do what they did should have to pay for this lawsuit out of their own pockets. Plaintiff offered Bourque, "To not sue you, take these cuffs off me and let's talk about what we both expect from one-another, cops and cop watchers." Meaning Defendant Bourque had the

opportunity to avoid this promised litigation. What could have been settled in a meeting will now cost the taxpayers.

63. The unconstitutional actions of Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 were approved, tolerated, and/or ratified by policymaking officers for Defendant Nevada and the LVMPD.

64. The aforementioned customs, policies, practices, and procedures, and the failure to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and terminate, and the unconstitutional approval, ratification and/or toleration of the wrongful conduct of Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 were a moving force and/or proximate cause of the deprivation of Plaintiff's clearly established constitutional rights under the United States and the State of Nevada.

65. As the supervisor on scene, Defendant Torrey had an obligation to ensure that his subordinates, including Defendants Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25 refrained from violating Plaintiff's Constitutional rights and prevented other peace officers from violating Plaintiff's rights.

66. Because Defendant Torrey learned and was apprised of the relevant facts surrounding the arrest and/or detention of Plaintiff, the use of force on Plaintiff, and the search of his person and property, and because he knew that such actions were illegal and unconstitutional, Torrey was obligated to immediately terminate those unconstitutional actions, and by failing to do so, Torrey is liable in his role as a supervisor. Torrey said specifically something to the effect of, "No, you have to be arrested because you've done this before, and we want to deter the behavior". Torrey openly stated he didn't want Plaintiff to film the police and he would put charges on Plaintiff because Plaintiff is a nationally known Cop Watcher. LVMPD was well

1    aware of who Plaintiff is and what he does.

2       67. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

3    and damages as set forth above.

4                              **FIFTH CAUSE OF ACTION**
                                **42 U.S.C. Section 1981**
5    **(Against Bourque, Torrey, Dingle, Sorenson, Sandoval, Doolittle, and Does 1-25)**

6       68. Plaintiff refers to paragraphs 1-67 of this Complaint and incorporates by reference the

7    allegations of said paragraphs as though expressly set forth at length at this point.

8       69. In doing the things herein alleged, Defendants intentionally discriminated against

9    Plaintiffs because of his race and political affiliation and viewpoints, thereby depriving him of

10   his right to the full and equal benefit of all laws and proceedings for the security of persons and

11   property as is enjoyed by all other citizens.

12      70. Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights

13   described herein, knowingly, maliciously, and with conscious and reckless disregard for whether

14   the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or

15   omissions were the moving force behind, and proximately caused injuries and damages to

16   Plaintiff as set forth above.

17      71. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable

18   under 42 U.S.C. § 1983 and Nevada law in an amount sufficient to punish and deter such

19   conduct. No punitive damages are sought against Defendant Nevada.

20                              **SIXTH CAUSE OF ACTION**
                                **Assault**
21                              **(Against All Defendants)**

22      72. Plaintiff refers to paragraphs 1-71 of this Complaint and incorporates by reference the

23   allegations of said paragraphs as though expressly set forth at length at this point.

17

73. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, attempted to make a harmful and/or offensive physical contact with Plaintiff and thereby placed Plaintiff in fear of an imminent harmful or offensive contact.

74. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

75. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of their employees acting in the course and scope of said employment, pursuant to NRS 41.032.

76. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

## SEVENTH CAUSE OF ACTION
### Battery
### (Against All Defendants)

77. Plaintiff refers to paragraphs 1-76 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

78. In doing the things herein alleged, Defendants intentionally, and without consent or legal justification, touched Plaintiff in a harmful and offensive manner.

79. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

80. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

81. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights or their actions were despicable and

carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling

Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

against Defendant Nevada.

**EIGTH CAUSE OF ACTION**
**False Arrest and Imprisonment**
**(Against All Defendants)**

82. Plaintiff refers to paragraphs 1-81 of this Complaint and incorporates by reference the

allegations of said paragraphs as though expressly set forth at length at this point.

83. In doing the things herein alleged, Defendants intentionally arrested and/or detained

Plaintiff without a warrant or other legal justification, and in doing so restrained Plaintiff,

handcuffed him, and placed him in patrol cars against his will, thereby depriving him of his

freedom of movement.

84. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

and damages as set forth above.

85. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of

its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

86. The conduct of the individual Defendants was malicious and oppressive in that they

intended to harm Plaintiff and deprive him of his rights or their actions were despicable and

carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling

Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

against Defendant Nevada.

**NINTH CAUSE OF ACTION**
**Invasion of Privacy**
**(Against All Defendants)**

87. Plaintiff refers to paragraphs 1-86 of this Complaint and incorporates by reference the

allegations of said paragraphs as though expressly set forth at length at this point.

88. During the incident giving rise to this action, Plaintiff had a reasonable expectation of privacy in his personal affairs, including the contents of his personal belongings such as vehicles, pockets, wallets, cell phones and other electronic devices.

89. In doing the things herein alleged, Defendants intentionally invaded and intruded into Plaintiff's personal and private affairs by searching his belongings without a warrant or other legal justification.

90. Defendants' invasion of Plaintiff's privacy would have been offensive to any reasonable person.

91. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

92. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

93. The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights or their actions were despicable and carried out with a willful and conscious disregard for Plaintiff'' rights and safety, entitling Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought against Defendant Nevada.

**TENTH CAUSE OF ACTION**
**Negligence**
**(Against All Defendants)**

94. Plaintiff refers to paragraphs 1-93 of this Complaint and incorporates by reference the allegations of said paragraphs as though expressly set forth at length at this point.

95. The individual Defendants owed Plaintiff a duty to use reasonable care in connection with the parties' interactions as described herein. In particular, said Defendants had a duty to

1  carefully investigate any criminal activity, to use care to avoid subjecting Plaintiff to an illegal

2  detention, arrest, seizure, retaliation for exercise of free speech, free press, or petition for redress

3  of grievances, use of force, or deprivation of any of the other rights enumerated herein, and to

4  use reasonable care to avoid engaging in biased policing or racial and political affiliation

5  profiling.

6      96. In doing the things herein alleged, Defendants breached the applicable duty of care by

7  acting unreasonably, carelessly, negligently and/or recklessly.

8      97. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries

9  and damages as set forth above.

10     98. Defendants Nevada and LVMPD are vicariously liable for the acts and omissions of

11  its employees acting in the course and scope of said employment, pursuant to NRS 42.005.

12     99. The conduct of the individual Defendants was malicious and oppressive in that they

13  intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and

14  carried out with a willful and conscious disregard for Plaintiff's rights and safety, entitling

15  Plaintiff to punitive damages pursuant to NRS 42.005. No punitive damages are being sought

16  against Defendant Nevada.

**PRAYER**

17  Plaintiff prays for damages as follows:

18     a. For compensatory damages in an amount according to proof;

19     b. For punitive damages in the amount of $5,000,000 or in an amount sufficient to punish

20  Defendants conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983

21  (no punitive damages are sought against Defendant Nevada);

22     c. For all applicable statutory penalties;

d. For attorneys' fees pursuant to 42 U.S.C. Section 1988;

e. For costs of suit;

f. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

**DECLARATION**

I declare under penalty of perjury, that the foregoing is true and correct.

DATED: May 7, 2023                                      Respectfully submitted,

Jose DeCastro
1258 Franklin St.
Santa Monica, CA 90404
chille@situationcreator.com
(310) 963-2445
*Pro Se*