**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
Attorneys for Defendants LVMPD, Ofc. Torres, Ofc. Shoemaker and Ofc. McCormick

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FLOYD WALLACE,<br><br>  Plaintiff,<br><br>  vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; STATE OF NEVADA; CHRISTIAN TORRES; JASON SHOEMAKER; CORY MCCORMICK and DOES 1 to 50, inclusive,<br><br>  Defendants. | Case Number:<br>2:23-cv-00809-APG-NJK<br><br>**DEFENDANTS OFC. TORRES, OFC. SHOEMAKER AND OFC. MCCORMICK'S MOTION TO DISMISS** |

Defendants Christopher[1] Torres, Jason Shoemaker and Cory McCormick, by and through their attorney of record, Marquis Aurbach, hereby file their Motion to Dismiss. This Motion is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed at the time of hearing.

Dated this 1st day of September, 2023.

MARQUIS AURBACH

By *s/Craig R. Anderson*
  Craig R. Anderson, Esq.
  Nevada Bar No. 6882
  10001 Park Run Drive
  Las Vegas, Nevada 89145
  Attorneys for Defendants

---

[1] The caption incorrectly identifies Officer Torres as "Christian".

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

Defendants Torres, Shoemaker, and McCormick are Las Vegas Metropolitan Police Department ("LVMPD") officers (collectively "Defendant Officers"). On May 10, 2023, plaintiff Floyd Wallace ("Wallace") covered his face with a mask, travelled to an LVMPD substation, and began filming inside a restricted area. Wallace's intent was to draw attention to himself and provoke a police encounter. When the Defendant Officers detained Wallace to investigate his suspicious behavior, Wallace initially refused to identify himself and argued the officers were violating his First Amendment rights. The Defendant Officers arrested Wallace and took him to jail. The district attorney did not purse the charges.

On May 24, 2023, Wallace filed his Compliant. (ECF No. 1-1) Initially, Wallace only served defendant Las Vegas Metropolitan Police Department ("LVMPD"). LVMPD filed its Motion to Dismiss on July 17, 2017. (ECF No. 8) On August 14, 2023, Wallace served the Defendant Officers. The Defendant Officers now file their Motion to Dismiss. Although many of the officers' arguments mirror those raised in LVMPD's Motion to Dismiss, the officers also raise their qualified immunity defense. As set forth below, all Wallace's claims must be dismissed.

### II. BACKGROUND

#### A. WALLACE'S FACTS.

##### 1. The Complaint.

According to Wallace's Complaint, on May 10, 2023, he went to LVMPD's Spring Valley Command Substation to record police officers. (ECF No. 1-1 at ¶17). Wallace covered his face with a mask and positioned himself at a gate with signs clearly prohibiting public access. (*Id.* at ¶¶17, 33). Wallace then began filming arriving police vehicles. (*Id.* at ¶¶18-19). A plain-clothed officer approached Wallace and "asked Plaintiff what he was doing." (*Id.* at 19). Wallace ignored the officer and returned to a public sidewalk. (*Id.* at ¶22).

Once on the sidewalk, Wallace several officers contacted Wallace. (*Id.* at ¶¶24-25). An officer approached Wallace with a drawn gun, directed Wallace to the front of a police car, and handcuffed him. (*Id.* at ¶¶24-27). Wallace was told he was being detained on "reasonable suspicion" because video surveillance showed him trying to enter a gate not open to the public. (*Id.* at ¶27). As the officers frisked Wallace for weapons, he "assert[ed] his right not to have his wallet searched . . . and asked for supervisor." (*Id.* at ¶¶29-32). Wallace refused to provide his identity. (*Id.* at ¶32). When the officers threatened Wallace with arrest, Wallace finally "provide[d] his name and birthday under threat of arrest." (*Id.* at ¶35). Wallace claims the officers racially profiled him, accused him of being a terrorist, and a possible auto thief. (*Id.* at ¶¶35-41). Eventually, Wallace was arrested for "attempted trespassing." (*Id.* at ¶46). Wallace was transported to jail and released with a citation. (*Id.* at ¶48).

### 2. **Wallace's videos.**

Wallace videotaped the subject encounter on two devices. Although not referenced in his Complaint, Wallace has requested this Court take judicial notice of his videos in other filings and represented the videos are "true and correct" recordings of his arrest. (ECF No. 23 at 3:15-20[2]).

Wallace's video shows him recording an LVMPD officer's private vehicle driving into a restricted area. (Video #1 at 6:45). The officer exits his vehicle and tells Wallace the area is restricted. (*Id.* at 7:00). Wallace never responds, walks right up to the gate and lingers for a few moments, and then turns and runs back to the sidewalk. (*Id.* at 7:36-8:00). At the sidewalk, Wallace stops and waits to see if the officer is following him. When he sees other officers walking and driving towards him, he says to himself, "Okay, they are coming. They're coming" (*Id.* at 8:40). He then turns and begins to walk away from the approaching officers despite their orders to "Stop! Stop Police!"

---

[2]*See* https://www.youtube.com/watch?v=W2wPORHfYlc ("Video #1, **Exhibit A**)

https://www.youtube.com/watch?v=sN_WGQTAAqk (Video #2, Ex. A)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

One officer approaches Wallace on foot with his firearm drawn at the low-ready position (i.e., not pointed at Wallace). Wallace says "You gotta gun pointed at me?" (*Id.* at 8:50 and 8:56). The officer orders Wallace to the front of the car, and Wallace ignores the command and says he will only comply if the firearm is put away. (*Id.* at 9:00-9:22). Wallace is eventually placed in front of the police car where he refuses the officers' requests to identify himself for over three minutes claiming "federal law trumps state law." (*Id.* at 10:18-13:39). Wallace refuses to provide any other identifiers and continues to obstruct. (*Id.* 13:39-16:40). He tells the officers his suspicious activity is his way of expressing his First Amendment rights and that "everyone has their own way of doing it." (*Id.* at 17:29-40). During the stop, the officers discover that Wallace has a warrant from a different state. (*Id.* at 18:00-11).

### 3. Wallace's Background.

Wallace is a First Amendment auditor. (ECF No. 1 at ¶43, Video #1 at 25:07). First Amendment audits are a social movement that involve photographing or filming from a public space to test constitutional rights, particularly the right to photograph and video record in a public space. If the encounter results in an actual or perceived violation of the auditor's First Amendment rights, the video is posted on YouTube, and the auditor files suit. Auditors are purposefully confrontational and provocative. *See* Video #1; *see also, Brown v. Basznianyn*, 2023 WL3098982, *2 (D. Az. Mar. 29, 2023).

Since filing this lawsuit, Wallace admits "I have been . . . illegally jailed three times in the last 30 days." (ECF No. 31 at 2:5). Prior to this lawsuit, Wallace filed an almost identical lawsuit in Texas. *See Wallace v. Taylor*, 2023 WL 2964418 (5th Cir. 2023). In that case, Wallace, in 2021, went to the Tomball (Texas) Police Department and began "creeping around a police tower" and filming the parking lot with his phone and body worn camera. When officers approached him, he "bolted." *Id.* at *1 (5th Cir. 2023). When the officers attempted to investigate, Wallace refused to provide identification and protested that the officers were violating his rights. *Id.* Eventually, Wallace "[i]n hopes of avoiding arrest, Wallace verbally provided his name, birthday, and address." *Id.* The officers arrested

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-464 5196269_2

Wallace for evading a police officer and failing to identify himself. *Id.* All of the charges except the evading charge were dropped because "there was not sufficient probable cause to support the charge." *Id.*

Wallace sued the officers and the police department, alleging false arrest, unreasonable search, First Amendment retaliation, malicious prosecution, and a *Monell* claim. *Id.* at *2. The district court denied the officers' qualified immunity request as "premature." The Fifth Circuit reversed, finding the officers "had reasonable suspicion to lawfully detain Wallace", had the right to search him after he refused to identify himself, and that the officers were entitled to qualified immunity on the malicious prosecution claim. *Id.* at *4-6.

### B. WALLACE'S CLAIMS FOR RELIEF.

Wallace's Complaint alleges the following claims for relief:

- **First Cause of Action:** 42 U.S.C. § 1983 claims for false arrest and excessive force against defendants Torres, Shoemaker, and McCormick.

- **Second Cause of Action:** 42 U.S.C. § 1983 "and equivalent rights under the Nevada state constitution" for equal protection violations against defendants Torres, Shoemaker, and McCormick.

- **Third Cause of Action:** 42 U.S.C. § 1983 "and equivalent rights under the Nevada state constitution" for free speech retaliation.

- **Fourth Cause of Action:** 42 U.S.C. § 1983 *Monell*[3] and Supervisory Liability against LVMPD.

- **Fifth Cause of Action:** 42 U.S.C. § 1981 for intentionally discriminating against Wallace "because of his race and political affiliation and viewpoints" against Torres, Shoemaker, and McCormick.

- **Sixth Cause of Action:** State law assault against all defendants.

- **Seventh Cause of Action:** State law battery against all defendants.

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  • **Eighth Cause of Action:** State law false arrest and imprisonment against all defendants.

2  • **Ninth Cause of Action:** State law invasion of privacy claim against all defendants.

3  • **Tenth Cause of Action:** State law negligence claim against all defendants.

On July 17, 2023, LVMPD filed its Motion to Dismiss. (ECF No. 8). That motion is fully briefed and pending. Thus, this Motion only involves the claims against the individual officers.

### III. LEGAL STANDARDS

#### A. MOTION TO DISMISS STANDARDS.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim is a question of law, *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989), and is appropriate when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir. 1990) (quoting *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir. 1986)). The Supreme Court has addressed the minimum standards a complaint must meet to withstand a motion to dismiss under FRCP 12(b)(6), when measured against the pleading requirements set by FRCP 8(a)(2). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff is obligated to provide the 'grounds' of his 'entitle[ment] to relief' [under Rule 8(a)(2), it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting FRCP 8; first set of original brackets in original). The Court extended the pleading requirements articulated in *Twombly*, an anti-trust case, to all cases. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). As a result, "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

1  To satisfy FRCP 8(a)(2), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* While a court must accept all allegations as true, that tenant "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than mere conclusions." *Id.* Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An exception exists if the evidence's "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them." *Id.* (citation omitted). Here, Wallace has relied upon his videos (attached as Exhibit A) in other pleadings and verified their authenticity. (ECF No. 23 at 3:15-20).

**B.    QUALIFIED IMMUNITY.**

Section 1983 is not itself a source of substantive rights, but merely the procedural vehicle by which to vindicate federal rights elsewhere conferred. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989). The Detectives do not dispute that they acted under color of law. Therefore, the task of this court is to determine whether the Detectives violated the Constitution. *See Albright*, 510 U.S. at 271. In addition, the Detectives have raised the affirmative defense of qualified immunity.

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has often stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's status as a true "immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "In determining whether an officer is entitled to qualified immunity, [a court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). Consequently, at summary judgment, a court can "only" deny an officer qualified immunity in a § 1983 action "if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

## IV.     LEGAL ARGUMENT

### A.     WALLACE'S FOURTH AMENDMENT AND STATE LAW FALSE ARREST CLAIMS FAIL AS A MATTER OF LAW (FIRST AND EIGHTH COA).

Wallace alleges the Defendant Officers detained him without reasonable suspicion and arrested him without probable cause. (ECF No. 1-1 at ¶53)

#### 1.     Reasonable suspicion and false arrest law.

***Reasonable suspicion to detain***

A *Terry* stop is a brief, minimally intrusive, investigatory detention. *Terry v. Ohio*, 392 U.S. 1 (1968). Although a *Terry* stop is a "seizure" under the Fourth Amendment, it is nevertheless lawful provided that the police officers has reasonable suspicion "that criminal activity may be afoot." *Id.* at 30; *United States v.* Johnson, 581 F.3d 994, 999 (9th Cir. 2009). Reasonable suspicion exists where, "in light of the totality of the circumstances, the

MAC:14687-464 5196269_2

officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). During a *Terry* stop, a law enforcement officer "may ask the detainee a moderate number of questions to determine his identify and to try to obtain information confirming or dispelling the officer's suspicions" without *Mirandizing* the detainee. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also Wallace*, 2023 WL 2964418, *3-4 (reasonable suspicion existed to detain and probable cause existed to arrest Wallace when he was filming outside a Texas police station and avoiding the police).

### *Probable cause to arrest*

A claim for false arrest is cognizable pursuant to § 1983 as a violation of the Fourth Amendment when the arrest was without probable cause or other justification. *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). To determine whether an officer has probable cause at the time of an arrest, a court considers "whether at that moment the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 953-54 (9th Cir. 2010) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity" and "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). In Nevada, probable cause can be based on "slight evidence." *Sheriff, Clark Cnty. v. Badillo*, 600 P.2d 221, 222 (Nev. 1979) (finding probable cause existed even though witness's identification was "in direct conflict with that of another witness"). Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest for any criminal offense, regardless of their stated reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). When the underlying facts claimed to support probable cause are not in dispute, whether those facts constitute probable cause is an issue of law. *See Ornelas v. United States*, 517 U.S. 690, 696-97 (1996).

"The Constitution does not guarantee that only the guilty will be arrested." *Olsen v. Henderson*, 2014 WL 806315, *5 (Feb. 27, 2014) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). The eventual disposition of the charges is immaterial to a court's probable cause determination as a conviction requires a higher burden of proof than is required to show probable cause. *See, e.g., Peschel v. City of Missoula*, 686 F.Supp.2d 1107, 1121 (D. Mont. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). The probable cause analysis is the same whether under federal law or Nevada state law. *See Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494 (1970).

### 2. The Defendant Officers lawfully detained and arrested Wallace.

First, the Defendant Officers had reasonable suspicion to detain Wallace to investigate his suspicious behavior. Wallace admits he was wearing a mask, acting suspiciously by following police officer vehicles entering an area prohibited to the public, filming inside the prohibited area, and initially refusing to explain his actions to the officers. Any reasonable officer would be concerned regarding Wallace's behavior and, at a minimum, investigate it. *See, e.g., Wallace*, at *3. In *Dave v. Laird*, the Southern District of Texas examined a similar case where a plaintiff was filming a "public breezeway" behind a police building and a dead-end alley where officers parked their police vehicles. 2021 WL 7367084, *3-7 (S.D. Tex. Nov. 30, 2021) When officers confronted the plaintiff, he, like Wallace, responded in a hostile manner. The district court dismissed plaintiff's false arrest claim, concluding that reasonable suspicion existed to detain because plaintiff filming where police officers parked their vehicles "would likely cause suspicion" and "a reasonable person filming in this area would know that their actions might cause legitimate worry or even fear on the part of [police officers] who depend on the security of their building and integrity of their vehicles for their safety." *Id.* at *15-17. *See also*, *Turner v. Lieutenant Driver*, 848 F.3d 678, 692 (5th Cir. 2017) (reasonable to detain individual filming police station from a public sidewalk as police can "take into account the location of the suspicious conduct and the degree of the potential danger being investigated.")

MAC:14687-464 5196269_2

1	In short, the Defendant Officers clearly had reasonable suspicion to detain and
2	investigate Wallace's behavior. At a minimum, there is no clearly established law
3	prohibiting the officers' detention, and the Defendant Officers are entitled to qualified
4	immunity on this claim.

5	Second, the Defendant Officers had probable cause to arrest Wallace. The officers
6	cited Wallace for "attempted trespass." Nev. Rev. Stat. § 207.200(1) makes it a
7	misdemeanor for "any person, under circumstances not amounting to a burglary . . . [to go]
8	upon the land or into any building of another *with intent to vex or annoy* the owner or
9	occupant thereof, or to commit any unlawful act." (Emphasis added.) It is undisputed that
10	Wallace approached a closed off area that was prohibited to the public, began filming
11	officers entering the area, and then fled when confronted. A reasonable officer could easily
12	conclude that probable cause existed that Wallace went onto the property intending to
13	commit a lawful act.

14	In addition, as stated above, probable cause can exist for a crime not charged. *See
15	Devenpeck*, 543 U.S. at 153-55 (Because the probable cause standard is objective, probable
16	cause supports an arrest so long as the arresting officers had probable cause to arrest for any
17	criminal offense, regardless of their stated reason for the arrest). Under Nev. Rev. Stat.
18	§ 197.190, it is obstruction under Nevada law to "impede" and/or prolong an investigation.
19	*See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146-47 (9th Cir. 2012). Nevada district
20	courts have held that an individual is obstructing when the individual is "given several
21	opportunities to comply with Defendants' orders" but fails to do so. *Kelly v. Las Vegas
22	Metro. Police Dep't.*, 2014 WL 3725927, *6 (July 25, 2014). Wallace admits (and his video
23	establishes) that he impeded the officers' investigation by failing to identify himself for over
24	three minutes after being asked to do so. *See Hibbel v. Sixth Judicial Dist. Court of Nev.*,
25	542 U.S. 177, 187-88 (2004) (principles of *Terry* permit a State to require a suspect to
26	disclose his name during a *Terry* stop). Therefore, at a minimum, probable cause also
27	existed to arrest Wallace for obstruction.
28

MAC:14687-464 5196269_2

At a minimum, there is no clearly established law establishing a lack of probable cause under similar circumstances.

### B. WALLACE HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR UNREASONABLE SEARCH AND SEIZURE OF PROPERTY (FIRST COA).

Wallace alleges the officers unreasonably searched and seized his property. The Complaint alleges Wallace was "searched and transported to Clark County Jail." (Compl. at ¶48). Under *Terry,* an officer may pat down a detained person who they reasonably believe may be armed and dangerous. 392 U.S. at 27. This brief search is to allow officers to conduct investigations without fear of violence. *Adams v. Williams,* 407 U.S. 143, 146 (1972). Further, when a suspect is arrested, a police officer may conduct a warrantless search incident to an arrest of both the arrested person and the area within his control. *Chimel v. California*, 395 U.S. 752, 763 (1969) *abrogated on other grounds by Arizona v. Grant*, 556 U.S. 332 (2009). Here, Wallace was patted down when he was detained, and briefly searched pursuant to his lawful arrest. This claim fails as a matter of law.

### C. WALLACE HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR EXCESSIVE FORCE (FIRST COA).

Wallace's First Cause of Action also alleges excessive force. The only force referenced by the Complaint (beyond the lawful search of Wallace's person) is that an officer drew his gun while approaching Wallace.

Courts approach excessive force claims in three stages. *See Espinosa v. City & Cty. of S.F.,* 598 F.3d 528, 537 (9th Cir. 2010); *Graham v. Connor,* 490 U.S. 386, 396-97 (1989). First, the court assesses the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted. *Id.* Then, the court evaluates the government interests by assessing the severity of the crime; whether the suspect posed an immediate threat to the officer or public's safety; and whether the suspect was resisting or attempting to escape. *Graham,* 490 U.S. at 396-97. Third, the court "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir.2003). According to the Ninth Circuit, the

drawing of a weapon becomes unreasonable when the "police officer [] terrorizes a civilian by brandishing a cocked gun in front of that civilian's face" while investigating a minor crime against a citizen. *Robinson v. Solano Cty.,* 278 F.3d 1007, 1123 (9th Cir. 2002); *see also Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) ("pointing guns at persons who are compliant and present no danger" is unreasonable).

Here, Wallace alleges an officer approached him "with a gun drawn." (ECF No. 1-1 at ¶24.) Wallace's video confirms that an officer approached him with his firearm at the low-ready position (i.e., not pointed at Wallace). By simply approaching Wallace with his gun drawn in the low-ready, the officer did not use excessive force. Further, Wallace's video confirms that the officers did not terrorize him. Also, Wallace was initially resistant and uncooperative. Once Wallace became cooperative, the weapon was immediately holstered. As the officer explained to Wallace on the video, his gun was drawn due to Wallace's suspicious behavior and the fact he was ignoring the officer's initial commands. At a minimum, the officer is entitled to qualified immunity as no clearly established law prohibits the drawing of a firearm in similar circumstances.

### D. WALLACE'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM MUST BE DISMISSED (SECOND COA).

Wallace alleges the officers violated his Fourteenth Amendment equal protection rights because they arrested him due to the "color of his skin, his position as a member of the press, and due to his political affiliation." (ECF No. 1 at ¶57).

To state a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the violation was committed with an intent or purpose to discriminate based upon plaintiff's membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001). To prevail, the plaintiff must show "that enforcement had a discriminatory effect and the police were motivated for a discriminatory purpose." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). Where the challenged governmental policy is "facially neutral," proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show

that some invidious or discriminatory purpose underlies the policy. *Id.* (citations omitted). If the action does not involve a suspect classification, a plaintiff may establish an equal protection claim showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state an equal protection claim under this theory, a plaintiff must allege that (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Id.*

Here, Wallace alleges officers intentionally discriminated against him based on the color of his skin, his position as a member of the press, and due to his political affiliation and viewpoints. First, Wallace's Complaint admits he never told the officers he was a member of the press or about his political affiliations. Thus, the officers could not have discriminated against him as a member of the press or due to his political views as he never made these facts known. *See Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, the press is not a protected class. Second, Wallace's racial profiling claim cannot meet the final two prongs established in the *Willowbrook* case. The Complaint does not allege Wallace was intentionally treated differently from others that are similarly situated as him and that there was no rational basis for the difference in treatment. Specifically, Wallace has failed to allege facts suggesting that LVMPD does not detain and arrest non-African American individuals who put on masks, travel to police substations and film police vehicles, and then obstruct investigations. This claim fails as a matter of law.

E.  **WALLACE'S FIRST AMENDMENT CLAIM MUST BE DISMISSED (THIRD COA).**

Wallace claims the officers violated his First Amendment rights by retaliating against him "for his speech, including his verbal protests and criticisms of the Defendants' actions in investigating, detaining, and arresting Plaintiff without any basis . . ." (Compl. at ¶61). Because Wallace admits he never verbally protested or criticized the officers, his claim

MAC:14687-464 5196269_2

is really that they arrested him for filming police activity. The Ninth Circuit has held there is a First Amendment right to film the police. *See Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir. 1995); *Askins v. U.S. Dep't of Homeland Sec.,* 899 F.3d 1035, 1044 (9th Cir. 2018) (There is a right to record law enforcement officers engaged in the exercise of their official duties in public places.) The right to film "may be subject to reasonable time, place, and manner restrictions." *Gilk v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011). The Ninth Circuit has held that "[r]easonable, content-neutral, time, place, or manner restrictions, on the other hand, are subject to 'an intermediate level of scrutiny." *Jacobson v. U.S. Dep't Homeland Sec.,* 882 F.3d 878, 882 (9th Cir. 2018) (citation omitted). Restrictions in a nonpublic forum must only be "reasonable in light of the purpose served by the forum and viewpoint neutral." *Id.* Finally, to prevail on a First Amendment retaliation claim in an arrest context, a plaintiff also "must plead and prove the absence of probable cause." *See Nieves v. Bartlett*, 139 S.Ct. 1715, 1725 (2019); *Hartman v. Moore*, 547 U.S. 250, 252 (2006) (holding that want of probable cause to support the underlying criminal charge must be alleged and proven for a First Amendment retaliation violation be actionable).

Here, Wallace was not arrested for filming, but rather for attempted trespass. As set forth above, probable cause existed for the arrest rendering this claim untenable under *Nieves* and *Hartman*. Assuming Wallace's arrest was a pretextual arrest to punish him for filming, the claim would still fail. Wallace admits he was attempting to film inside a non-public, gate-guarded area that was off limits to the public. It is reasonable for security reasons to restrict individuals from filming officers leaving and entering police stations. Thus, Wallace has not pled facts sufficient to state a claim against the Defendant Officers for a First Amendment violation.

F. **WALLACE'S 42 U.S.C. § 1981 CLAIM MUST BE DISMISSED (FIFTH COA).**

Wallace's Fifth Cause of Action alleges the officers discriminated against him because of his race and political affiliations. (Compl. at ¶¶72-75) 42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, national origin,

or ancestry. *See* 42 U.S.C. § 1981. The Ninth Circuit recently issued an opinion indicating that while § 1981 claims establish substantive rights that a state actor may violate, it does not contain a remedy against that state actor for such violations. *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) (en banc). Therefore, this claim must be dismissed.

G. **WALLACE'S STATE LAW CLAIMS MUST BE DISMISSED.**

1. **Wallace's assault and battery claims must be dismissed for failure to state a claim upon which relief can be granted (Sixth and Seventh COA).**

Wallace's state law assault and battery claim is the same as his 42 U.S.C. § 1983 excessive force claim. He alleges excessive force was used by pointing the gun at him and then taking him into custody. First, any touching of Wallace was privileged as it was pursuant to a valid arrest, and he does not allege any facts suggesting unnecessary force was used to search him or handcuff him. Second, the assault claim involving the pointing of the gun fails for the same reasons Wallace's Fourth Amendment excessive force claim fails. *Ramirez v. City of Reno*, 925 F.Supp. 681, 691 (D.Nev. 1996) ("The standard for common-law assault and battery by a police officer mirrors the federal civil rights law standard. . .").

2. **Wallace's false arrest and false imprisonment must be dismissed for failure to state a claim upon which relief can be granted (Eighth COA).**

The false arrest/imprisonment claim is identical to Wallace's Fourth Amendment unreasonable search and seizure claim. The probable cause analysis is the same whether under federal law or Nevada state law. *See Marschall*, 464 P.2d 494. *Badillo*, 600 P.2d at 223 (probable cause only requires "slight evidence"). In addition, the officers are protected by discretionary immunity under Nev. Rev. Stat. § 41.032. *See Gonzalez v. Las Vegas Metro Police Dep't.*, No. 61120, 2013 WL 7158415, *2-3 (Nev. Nov. 21, 2013) (holding that an officer's decision to arrest based on a matched description in a facially valid warrant was entitled to discretionary immunity).

In *Gonzalez v. Las Vegas Metro Police Dep't.*, the Nevada Supreme Court evaluated the application of the discretionary immunity doctrine in evaluating the officer's decision to arrest and detain a suspect. In *Gonzalez*, the court found "LVMPD's decision to arrest or

detain Gonzalez based on a warrant was part of a policy consideration that required analysis of multiple social, economic, efficiency, and planning concerns including public safety." *Gonzalez v. Las Vegas Metro Police Dep't.*, 61120, 2013 WL 7158415, at *3 (2013) (citing *Martinez v. Maruszczak*, 123 Nev. 433, 446-47, 168 P.3d 720, 729 (2007)); *see also Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998) (concluding that no civil liability attached to a state trooper's decision to arrest a driver for allegedly refusing to sign a traffic ticket because the decision to do so was a discretionary decision requiring personal deliberation and judgment and, thus, entitled to immunity under NRS 41.032(2); *Coty v. Washoe Cty.*, 839 P.2d 97, 100 n.7 (Nev. 1992) ("the decision of whether to make an arrest is largely discretionary.").

### 3. Wallace's invasion of privacy claim must be dismissed for failure to state a claim upon which relief can be granted (Ninth COA).

"Nevada's common law recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. The purpose of the tort is to provide redress for intrusion into a person's reasonable expectation of privacy . . ." *Clark Cty. School Dist. v. Las Vegas Review-Journal,* 429 P.3d 313, 320 (Nev. 2018). The tort of invasion of privacy embraces four different tort actions: "(a) unreasonable intrusion upon the seclusion of another; or (b) appropriation of the other's name or likeness; or (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Restatement (Second) of Torts § 652A (1977); *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1278 (Nev. 1995).

Wallace alleges the officers committed this tort by searching him. However, as set forth above, the search was lawful as it was a basic search pursuant to a lawful arrest.

### 4. Wallace's negligence claim must be dismissed for failure to state a claim upon which relief can be granted (Tenth COA).

Wallace alleges the officers conducted a negligent investigation that led to his arrest. Therefore, if the arrest was lawful, this claim fails. In addition, the officers are immune pursuant to Nev. Rev. Stat. § 41.032. *See Pittman v. Lower Court Counseling*, 871 P.2d 953, 956 (1994) ("the nature of an investigation is inherently discretionary."); *Foster v. Washoe Cty.*, 964 P.2d 788, 792 (1998).

## V. CONCLUSION

Based upon the foregoing, the Defendant Officers request they be dismissed from this lawsuit.

Dated this 1st day of September, 2023.

          MARQUIS AURBACH

By *s/Craig R. Anderson*
   Craig R. Anderson, Esq.
   Nevada Bar No. 6882
   10001 Park Run Drive
   Las Vegas, Nevada 89145
   Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS OFC. TORRES, OFC. SHOEMAKER AND OFC. MCCORMICK'S MOTION TO DISMISS** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 1st day of September, 2023.

☐ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Floyd Wallace
1613 Leopard Lane
College Station, TX 77840
*Pro Per*

*s/Sherri Mong*
an employee of Marquis Aurbach

MAC:14687-464 5196269_2

Exhibit A
https://www.youtube.com/watch?v=W2wPORHfYlc
("Video #1)

